291 N.J. Super. 234 (1996)
677 A.2d 244
HERBERT PETAK AND ANITA PETAK, PLAINTIFFS-APPELLANTS,
v.
CITY OF PATERSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1996.
Decided June 13, 1996.
*235 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
*236 Donald J. Maizys, Fair Lawn, argued the cause for appellants (Karas, Kilstein, Hirschklau, Feitlin & Youngman, attorneys; Mr. Maizys, of counsel and on the brief).
Alan L. Stein, Paterson, argued the cause for respondent (Susan E. Champion, attorney; Mr. Stein, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D. (Retired and temporarily assigned on recall.)
Plaintiffs appeal from an order granting a cross-motion for summary judgment in favor of the City of Paterson (City) dismissing plaintiffs' complaint and denying plaintiffs' motion for summary judgment. We reverse.
After Aram Calfayan purchased two tax sale certificates for property located in Paterson, New Jersey, he assigned them to plaintiff Anita Petak and delivered the original certificates to her. When the property owner redeemed the certificates, the tax collector, who apparently had no knowledge of the assignments, paid the moneys to Calfayan but failed to procure the original tax sale certificates from him. Plaintiffs now seek to recover over $47,000 in redemption moneys from the City of Paterson.

I.
In October 1988 Calfayan paid $12,897.88 for tax sale certificate number XXXX-XXXX for Block CO326, Lot 5, as shown on the tax map of the City. At the same time he paid $13,976.52 for tax sale certificate number XXXX-XXXX for Block CO385, Lot 15, as shown on the tax map. Both certificates were recorded in the office of the Register of Deeds and Mortgages of Passaic County ("Register") on March 28, 1989. On November 1, 1988, Calfayan sold, transferred and assigned these two certificates and other certificates to Anita Petak for $29,343.37.
In March 1991 Colony Management Company, the owner of the two properties, redeemed certificate XXXX-XXXX by submitting to the tax collector, Kathleen J. Gibson, a certified check in the *237 amount of $20,778.76 made payable to Calfayan. The tax collector then forwarded or delivered this check to Calfayan. In August 1992 Colony Management redeemed certificate XXXX-XXXX by the same procedure. A certified check in the amount of $26,290.76 made payable to Calfayan was given to the tax collector and then delivered by her to Calfayan.
In October 1992 plaintiffs' attorney notified the tax collector that Calfayan had assigned the two tax sale certificates to his clients. On December 29, 1992, the assignment was recorded in the office of the Register.
In April 1993 Colony Management's title insurance company notified the tax collector that tax certificate XXXX-XXXX for Block CO326, Lot 5, had not been canceled of record. The tax collector, who maintains that she never saw the letter from plaintiffs' attorney notifying her of the assignment until early 1994,[1] advised Calfayan that he either must produce the original certificate of sale or endorse a warrant of discharge so that the lien of the tax sale certificate could be canceled of record. The tax collector prepared a warrant of discharge which Calfayan signed and which was subsequently recorded on May 13, 1993, in the office of the Register. According to the tax collector's deposition testimony, tax sale certificate XXXX-XXXX remains open of record.
Plaintiffs, describing themselves as assignees of two municipal tax sale certificates, filed suit against the City to recover redemption moneys which they claimed were wrongfully paid by the City to the assignor, Calfayan.[2] The City filed an Answer and Third-Party Complaint against Calfayan for indemnification. Calfayan, *238 who filed for Chapter 7 bankruptcy prior to the institution of this suit, did not file an answer.[3]
Following discovery, plaintiffs moved for summary judgment against the City. The City filed a cross-motion for summary judgment. On September 29, 1995, the trial court heard oral argument and entered orders denying plaintiffs' motion and granting the City's cross-motion. The City's brief indicates that by order dated February 26, 1996, their third-party complaint against Calfayan was dismissed without prejudice.
The trial court found that the tax collector, indeed, had acted negligently when she paid the redemption moneys to Calfayan. The court stated:
However, negligent or not, there is no way that the tax collector could have known that Mr. Calfayan had assigned his rights to the Plaintiffs. Even if the tax collector had made Mr. Calfayan sign the warrants of discharge at the time the redemption monies were paid out, the tax collector still would not have known that the plaintiffs were the assignees.
In conclsuion [sic], the City of Paterson implemented certain procedures to address those which NJSA 54:5-57 did not. It is clear that [the tax collector] did not follow those procedures. However, this court finds that [the tax collector] acted within her discretion, based upon prior dealings with Mr. Calfayan, when she did not require Mr. Calfayan to sign a warrant of discharge. In accordance with well established case law and NJSA 59:7-2b, we find the City of Paterson to be immune. Hence, Plaintiffs' motion for summary judgment against the defendant is denied. Defendant's cross motion for summary judgment against the plaintiffs is granted.

II.
On appeal, plaintiffs contend that the City did not comply with the statutory requirements of either N.J.S.A. 54:5-57 or N.J.S.A. 54:5-55 in paying the redemption moneys received from Colony Management to Calfayan rather than to plaintiffs when Calfayan failed to produce the tax sale certificates. In addition, the City failed to comply with its own procedures  and thus *239 aggravated its negligence  when the tax collector did not require Calfayan to sign a warrant of discharge for cancellation of certificate XXXX-XXXX at the time the redemption moneys were turned over to him.
The procedure for redemption is provided in N.J.S.A. 54:5-57:
Notification of and settlement with purchaser[.]
The collecting officer shall at once, on receipt of the redemption money, mail notice thereof to the purchaser [of the tax sale certificate], if his address can be ascertained, and shall pay all redemption moneys to him or his assigns on his surrender of the certificate of sale and compliance with the provisions of sections 54:5-55 and 54:5-56[4] of this title.
[Emphasis added.]
N.J.S.A. 54:5-55 provides:
The collecting officer on receiving payment in full shall ... execute and deliver to the person redeeming a certificate of redemption which may be recorded with the register ... [or] the county clerk. The county clerk or register ... shall, on request, note on the record of the original [recorded] certificate of sale a reference to the record of the certificate of redemption ... or, at the option of the person redeeming, the collecting officer shall procure and deliver to the owner the certificate of sale receipted for cancellation by indorsement in the same manner required by law to satisfy or cancel a mortgage, whereupon the record of the certificate of sale shall be canceled by the county clerk or register ... in the same manner and for the same fees as in the case of mortgages.
These statutes are neither inconsistent nor contradictory, and the latter statute does not render the surrender of the certificate of sale optional. It simply permits the tax collector alternative means by which to provide evidence, in recordable form, that payment in full has been made to the collector: the collector shall issue a certificate of redemption or "procure and deliver to the owner the certificate of sale receipted for cancellation by indorsement," N.J.S.A. 54:5-55.
Thus, in order to redeem property from the lien of a tax sale certificate, a person with an interest in the land ordinarily pays the redemption money directly to the tax collector. N.J.S.A. 54:5-54. The holder of the certificate is entitled to those moneys upon surrender of the certificate. N.J.S.A. 54:5-57. The tax *240 collector then must deliver to the owner or person redeeming proof of receipt of full payment. N.J.S.A. 54:5-55. As one court has explained:
[T]he legislative intent was to designate the collecting officer, an official of the municipality, as agent of the purchaser, his heirs or assigns, for the purpose of redemption, authorizing the collecting officer to receive the redemption monies and directing him to pay all redemption monies to the purchaser or to his assigns on surrender of the tax sale certificate, receipted for cancellation or assigned as the circumstances may require.
[Parlo v. Van Horn, 27 N.J. Super. 64, 72, 98 A.2d 721 (Ch.Div. 1953).]
Clearly, the statutory procedure for redemption of tax sale certificates is predicated on production of the original certificate. Moreover, in order that these prescriptions are adhered to, N.J.S.A. 54:5-49 prohibits a tax sale certificate from covering more than one tax parcel. See City of Newark v. Ladato, 139 N.J. Eq. 471, 474, 51 A.2d 895 (Ch. 1947) (pointing out "that these statutory provisions cannot be literally followed when part only of the land is redeemed").
A plain reading of the applicable statutes mandates a reversal of the trial court's orders of September 29, 1995. There is nothing in the statutes that limits their effect to "known assigns," as contended by the City, so as to enable the collecting officer to rely solely on the municipal tax sale list, as she did here, to determine to whom the redemption moneys should be paid.[5] To the contrary, the right to the moneys is established by surrender of the certificate and proof of assignment, if any. Moreover although the tax collector stated that there was no reliable way for the City to determine whether a purchaser has assigned a certificate, the fact that Calfayan failed to surrender the original certificates, in and of itself, was sufficient cause for the collecting officer to believe that someone other than Calfayan was the holder. Here, the tax *241 collector simply failed to comply with the mandatory provisions of the statute. Her claims of a dilemma and that she acted in good faith are irrelevant.
Because no statutory provision exists for the issuance of a duplicate certificate of tax sale to a private purchaser who claims that the original is lost or destroyed, the trial court found it appropriate that the City "implemented certain procedures to address those which [N.J.S.A.] 54:5-57 did not." However, the City's implemented procedures simply ignored N.J.S.A. 54:5-57. In reviewing the provisions of the tax sale law, it is evident that the importance of the actual tax sale certificate should not be underestimated and the failure of a person claiming a right to the redemption moneys without producing the certificate cannot be treated routinely. For example, N.J.S.A. 54:5-52.1 reflects the gravity of a situation in which the municipality itself loses a tax sale certificate.
In case of the destruction or loss of a tax title certificate which was acquired by any municipality in this State at a tax sale held in that municipality and the said municipality is the lawful owner thereof, the collector of taxes ... shall issue and execute a new certificate of tax sale in place of the one which has been destroyed or lost; provided, he or she shall have been duly authorized so to do by a resolution of the governing body of the said municipality; and provided, further, said original tax sale certificate had been issued at least two years prior thereto. There shall appear on the new certificate a statement that it is a duplicate of the original one which was destroyed or lost and the date of said original certificate and the date of the tax sale upon which it was issued and the name and title of officer who issued same.
[N.J.S.A. 54:5-52.1 (emphasis added).]
This section of the statute protects assignees in two ways: the governing body of the municipality must participate in the decision to issue a new certificate; and the municipality cannot issue a duplicate within two years of the date of the sale. In other words, although ordinarily the municipality would be able to foreclose the right of redemption six months from the date of sale, it is implicit that where the certificate cannot be located the municipality must wait for two years, at which time, presumably, any assignee would come forward with the original certificate to exercise his or her right to foreclose the equity of redemption. See N.J.S.A. 54:5-86. *242 Moreover, if the original certificate later is found, it "shall be canceled forthwith" by the proper municipal officer. N.J.S.A. 54:5-52.3.
The seemingly off-handed manner with which the City treated Calfayan's inability to produce the original certificates indicates that the City fails to understand the nature of a tax sale certificate. At the very least, the certificate constitutes a muniment of title upon foreclosure of the right of redemption.[6] Lawrence J. Fineberg, 2 Handbook of New Jersey Title Practice § 10218 (1992). The fact that there is no requirement for this muniment or any assignment thereof to be recorded in the county clerk's or register's office or for the tax collector to conduct a search of the county records prior to redemption indicates that the certificate is more analogous to a promissory note than to a deed or mortgage.
A promisor, for example, in order to protect itself from further liability upon tendering payment in full of a note, must obtain the original note from the promisee. See Martling v. Hemhauser, 154 A. 399 (N.J.Cir.Ct. 1930) (holding that the assignee of a note could hold the maker liable for full payment, notwithstanding that the maker had paid the promisee in full). By way of contrast, the effect of the loss of an original deed or mortgage, once recorded, is meaningless. Nonetheless, there exists a statutory mechanism for replacement. N.J.S.A. 2A:47-1 provides that "[t]he existence of any lost or destroyed deed or other instrument relating to title or real or personal property may be established by judgment in the superior court in an action brought in a summary manner or otherwise."
An Illinois court has addressed the negotiable nature of a tax sale certificate:

*243 The tax sale certificate does not constitute title to the property, which the owner still holds. Rather, the tax sale certificate is personal property, a form of negotiable instrument, which represents a lien on the property in favor of the tax buyer and the tax buyer's right to enforce the lien and institute tax deed proceedings after the redemption period expires.

[In re Cook County Treasurer, 185 Ill. App.3d 701, 134 Ill.Dec. 15, 542 N.E.2d 15, 16 (1989) (emphasis added).]
In light of N.J.S.A. 2A:47-1, the City's protestation that "[o]bviously the Tax Collector can only pay an assign[ee] of the purchaser where the assignment has been disclosed to the collector" rings hollow. The City could have and should have refused to turn over the redemption money until Calfayan produced the certificates. The burden would then have been on Calfayan to bring suit in the Superior Court, at which time the City could have deposited the money with the Clerk of the Superior Court.[7] Alternatively, the City could have instituted an interpleader action or required Calfayan to post an indemnity bond. See e.g., N.J.S.A. 12A:3-804,:7-601. If the present statutes governing the sale of tax sale certificates are inadequate in the circumstances confronted by the City, the solution must rest with the Legislature and not with improvised procedures.
There is no support for the City's argument that the original certificate protects the interests not of the purchaser's assigns but rather of the property owner. Nor is there any support for the City's contention that "[i]f the original certificate is lost, then a warrant of discharge may be substituted."

III.
The City contends that it is relieved of liability by virtue of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3. Specifically, the City contends that N.J.S.A. 59:7-2(b) protects it from *244 liability. Under that provision, "[n]either a public entity nor a public employee is liable for an injury caused by: An act or omission in the interpretation or application of any law relating to a tax."[8] However, N.J.S.A. 59:1-4 provides that "[n]othing in this act shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees."
A brief overview of the tax sale law, N.J.S.A. 54:5-1 to -129, reveals that the contractual nature of the agreement between the City and Calfayan precludes application of N.J.S.A. 59:7-2(b) to this case. When a property owner fails to pay real estate taxes on its property, the municipality may hold a tax sale, N.J.S.A. 54:5-19, and the successful bidder receives a document entitled "Tax Sale Certificate," N.J.S.A. 54:5-46. The sale itself does not divest the property owner of the land; rather, the purchaser of the certificate succeeds to the lien interest of the municipality. Township of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4, 548 A.2d 521 (App.Div. 1988); see also City of Newark v. Ladato, supra, 139 N.J. Eq. at 474, 51 A.2d 895.
The holder of a tax sale certificate acquires an inchoate interest encompassing three distinct rights:
The holder has the right to receive the sum he paid for the certificate with interest at the redemption rate for which the property was sold. N.J.S.A. 54:5-58. The holder has the right to redeem from any other holder a subsequently issued tax sale certificate. Realty Sales Corp. v. Payne, 76 N.J. Super. 59, 61-62, 183 A.2d 772 (Ch.Div. 1962), aff'd. o.b. 78 N.J. Super. 504, 189 A.2d 458 (App.Div. 1963), certif. den. 41 N.J. 162, 195 A.2d 305 (1963). Finally, and most important, the holder has *245 the right to acquire title by foreclosing the equity of redemption of all outstanding interests including the owner's. N.J.S.A. 54:5-8 et seq.

[Township of Jefferson, supra, 228 N.J. Super. at 4-5, 548 A.2d 521.]
The tax sale certificate form, when duly signed, constitutes presumptive evidence of the truth of the statements contained therein, N.J.S.A. 54:5-52, and creates a contractual relationship between the municipality and the purchaser. Because the City's accountability to the plaintiffs is based on contract, the City is not immunized from liability for its failure to comply with the statutory mandates concerning tax sale certificates. Therefore, we do not need to decide if the tax collector's error constitutes a negligent ministerial act or clerical mistake or a discretionary act immunized for tort actions under N.J.S.A. 59:2-3a.

IV.
The order of the trial court is reversed and summary judgment is granted in favor of plaintiff Anita Petak against the City of Paterson. We remand to have the trial court determine the amount with interest that plaintiff Anita Petak should receive from the City.
NOTES
[1] During the tax collector's deposition, plaintiffs' attorney produced a photocopy of the signed return receipt for the certified letter notifying the tax collector of the assignment; the collector stated that she did not recognize the signature of the employee who acknowledged receipt of the letter.
[2] Anita Petak is the sole assignee on the assignment. We find no information in the record or either brief explaining why Herbert Petak is named as a plaintiff.
[3] Ostensibly because of Calfayan's Chapter 7 bankruptcy filing, plaintiffs did not name him as a defendant in this litigation. They have, however, caused criminal charges to be filed against him.
[4] N.J.S.A. 54:5-56 was repealed in 1965.
[5] Each municipality is charged with keeping a permanent, bound record of tax sales within the taxing district. That record, called a tax sale list, must include the sale date and the name and address of the tax sale purchaser. N.J.S.A. 54:5-21, -24, -35; Township of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 6, 548 A.2d 521 (App.Div. 1988).
[6] Muniments are the "instruments of writing and written evidences which the owner of lands, possessions, or inheritances has, by which he is enabled to defend the title of his estate." Black's Law Dictionary 1170 (4th ed. 1957).
[7] The City speculates that Calfayan would have lied just as readily had he signed the warrants upon receipt of the redemption moneys. Indulging in the same type of useless speculation, one wonders if Calfayan would have gone so far as to institute an appropriate action in the Superior Court had the City so required.
[8] Given that delinquent taxes are paid in full with the proceeds acquired from the sale of tax certificate, we do not decide whether this section of the statute applies to matters between the municipality and the purchaser of a certificate and his or her heirs and assignees. We note, however, that the applicability is particularly questionable since the Task Force Comment indicates that "[p]resumably this activity would be considered discretionary under existing law but it is desirable to make the immunity explicit," comment to N.J.S.A. 59:7, and our Supreme Court has held that "the discretionary function immunity should be limited to actual policymaking" rather than operational decisions, Costa v. Josey, 83 N.J. 49, 60, 415 A.2d 337 (1980).