881 A.2d 749 (2005)
380 N.J. Super. 159
TOWN OF PHILLIPSBURG, a Municipal Corporation in the County of Warren and State of New Jersey, Plaintiff-Respondent/Cross-Appellant,
v.
BLOCK 1508, LOT 12 (142 Mercer Street) assessed to Donald Strebig, Block 1227, Lot 2 (370 Memorial Parkway) assessed to Donald Phelan, Clerk of Superior Court of New Jersey (TSC: assessed to Marie Emery, Inc.), Defendants, and
Community Property Resources Corporation, Petitioner/Intervenor-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 2004.
Decided September 8, 2005.
*750 William R. Edleston, Phillipsburg, attorney for intervenor-appellant/cross-respondent.
Courter, Kobert & Cohen, Hackettstown, attorneys for respondent/cross-appellant (Lawrence P. Cohen, of counsel; James F. Moscagiuri and Sandy L. Galacio, Jr., on the brief).
Before Judges STERN, WECKER and GRAVES.
The opinion of the court was delivered by
WECKER, J.A.D.
In this appeal, we address the relationship between the Tax Sale Law governing a motion to vacate a final judgment of foreclosure, and Rule 4:50, governing a motion to vacate a final judgment. We conclude that the policies underlying the Tax Sale Law support the orders on appeal, which denied the intervenor's motion to vacate a judgment of foreclosure and its motion for reconsideration.
This case presents yet another variation of the competing interests involved in proceedings to foreclose a tax sale certificate. Here, the municipal holder of two later-issued tax sale certificates obtained a judgment of foreclosure. The legal effect of *751 that judgment was to foreclose all prior certificate holders' rights of redemption and to vest title in fee simple to the subject property in the municipality. It is undisputed that the property, known as 370 Memorial Parkway, has long been vacant, has not been maintained for many years, and is in need of rehabilitation. Within three months of the recording of the judgment, the foreclosed holder of a tax sale certificate, which had obtained its interest by assignment after the filing of the complaint, sought to intervene in the action in order to vacate the judgment and redeem certain later-issued certificates. The Chancery Division judge granted the assignee's motion to intervene but denied its motion to vacate the judgment and to redeem the tax sale certificates, which were held by the municipality.

I.
A review of the pertinent provisions of the Tax Sale Law, N.J.S.A. 54:5-1 to -104.75, will provide helpful background to our decision. The underlying purpose and rationale of the Tax Sale Law is to support tax titles by encouraging courts to bar the right of redemption "to the end that marketable titles may thereby be secured." Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964) (quoting N.J.S.A. 54:5-85). The Court thus incorporated the language of the statute: "The provisions of this article[[1]] shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured." See also Wattles v. Plotts, 120 N.J. 444, 451-52, 577 A.2d 131 (1990). Protecting the marketability of tax titles enables municipalities (1) to maximize the recovery of unpaid property taxes (and other municipal charges) and (2) to quickly return to the tax rolls the property on which such charges have remained in default.
In furtherance of those goals, the Legislature and the courts have looked with disfavor on those (described as "intermeddlers" or "title raiders") who would take advantage of the Tax Sale Law to obtain a windfall at the expense of persons who either might be unaware or unable to take advantage of their own rights and interests in the property. See, e.g., O & Y Old Bridge Dev. Corp. v. Cont'l Searchers, Inc., 120 N.J. 454, 577 A.2d 137 (1990); Wattles, supra, 120 N.J. 444, 577 A.2d 131; Bron, supra, 42 N.J. 87, 199 A.2d 625; Savage v. Weissman, 355 N.J.Super. 429, 810 A.2d 1077 (App.Div.2002).
In Savage, we explained the basics of the tax sale law:
When municipal taxes are delinquent for the period stated by statute, a lien arises on the land on which the taxes are assessed, N.J.S.A. 54:5-6, and the municipality may enforce the lien by selling the property as prescribed by statute. N.J.S.A. 54:5-19. The officer holding the sale delivers to the purchaser a certificate of sale. N.J.S.A. 54:5-46.
A tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority. Chelsea Laundry Co. v. Toscano, 14 N.J.Super. 496, 500, 82 A.2d 473 (Ch.Div.1951). Furthermore, the interest of the holder of the tax sale certificate is entirely subordinate to the statutory right of redemption of the property owner. This right of redemption can be exercised up to the date fixed by the court barring the right of redemption. Manning v. Kasdin, 97 N.J.Super. 406, 417, 235 A.2d *752 219 (App.Div.1967), certif. denied, 51 N.J. 182, 238 A.2d 469 (1968). See generally, C. Zachary Seltzer, New Jersey Law, Tax Title Foreclosures, 13-213 to -214 (1971).
After two years, the purchaser of the tax sale certificate, his heirs or assigns, may commence a proceeding known as a tax sale foreclosure to foreclose or bar the property owner's right of redemption. N.J.S.A. 54:5-86.[[2]] The parties to this proceeding are the property owner and the holders of existing interests in the property. Bron, supra, 42 N.J. at 92, 199 A.2d 625. The property owner, his heirs, a holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits pursuant to N.J.S.A. 54:5-7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner prescribed by statute. N.J.S.A. 54:5-54. A judgment of the Superior Court in an action to foreclose the right of redemption may give full relief
to bar the right of redemption and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser.
[N.J.S.A. 54:5-87.]
[Savage, supra, 355 N.J.Super. at 436, 810 A.2d 1077.]
In Simon v. Rando, 374 N.J.Super. 147, 863 A.2d 1078 (App.Div.2005), certif. granted, 183 N.J. 585, 874 A.2d 1104 (2005), we described the specific requirements of the Tax Sale Law applicable to persons who acquire a tax sale certificate by assignment after the filing of a complaint to foreclose:
Where one acquires an interest in the property by assignment after the complaint is filed, the Tax Sale Law imposes additional procedural and substantive requirements. Pursuant to N.J.S.A. 54:5-89.1, a person with an unrecorded assignment of an interest may record the assignment and "apply to be made a party to the action."[[3]] Absent such an application, the person is bound by "the proceedings ... in the same manner as if he had been made a party to and appeared in [the foreclosure] action, and the judgment . . . had been made against him as one of the defendants. . . ." N.J.S.A. 54:5-89.1; cf. N.J.S.A. 54:5-90 to -91 (unknown owners of recorded interests). If the person does not "apply to be made a party," the person cannot redeem with the tax collector because such redemption is not "made in that cause." N.J.S.A. 54:5-98.
[Id. at 154, 863 A.2d 1078 (emphasis added).][4]
After the filing of a complaint in foreclosure, the municipal taxing authority may not accept redemption of a tax sale certificate; redemption then can be made only in the foreclosure proceeding. N.J.S.A. 54:5-98.[5] But one who acquires an interest in *753 such property after the filing of a complaint has neither the right to redeem nor to participate in the foreclosure action if the interest was acquired "for a nominal consideration." N.J.S.A. 54:5-89.1.[6]
The purchase of a tax sale certificate benefits the municipality in the short term by allowing it to collect otherwise uncollected property tax or other unpaid assessments. In the long term, municipalities benefit when their certificates are marketable. The law encourages the market by offering several rights to a purchaser. See, e.g., Petak v. City of Paterson, 291 N.J.Super. 234, 677 A.2d 244 (App.Div.), certif. denied, 146 N.J. 566, 683 A.2d 1162 (1996):
The holder of a tax sale certificate acquires an inchoate interest encompassing three distinct rights:
The holder has the right to receive the sum he paid for the certificate with interest at the redemption rate for which the property was sold. N.J.S.A. 54:5-58. The holder has the right to redeem from any other holder [of] a subsequently issued tax sale certificate. Realty Sales Corp. v. Payne, 76 N.J.Super. 59, 61-62, 183 A.2d 772 (Ch.Div.1962), aff'd. o.b., 78 N.J.Super. 504, 189 A.2d 458 (App. Div.1963), certif. denied, 41 N.J. 162, 195 A.2d 305 (1963). Finally, and most important, the holder has the right to acquire title by foreclosing the equity of redemption of all outstanding interests including the owner's. N.J.S.A. 54:5-8 et seq.

[Township of Jefferson [v. Block 447A, Lot 10], 228 N.J.Super. 1,] 4-5, 548 A.2d 521 [(App.Div.1998)].
[Petak, supra, 291 N.J.Super. at 244-45, 677 A.2d 244.]
The holder of a prior tax sale certificate has an absolute right of redemption until that right is cut off by a judgment in foreclosure. By contrast, the holder of a subsequent tax sale certificate can cut off a prior certificate holder's right of redemption only by bringing an action to foreclose. See Realty Sales v. Payne, 76 N.J.Super. 59, 61-62, 183 A.2d 772 (Ch. Div.1962), aff'd, 78 N.J.Super. 504, 189 A.2d 458 (App.Div.), certif. denied, 41 N.J. 162, 195 A.2d 305 (1963).[7]
The effect of a final judgment of foreclosure under the Tax Sale Law is to vest title to the property in fee simple. "[I]n *754 an action to foreclose the right of redemption, [the court may] bar the right of redemption and . . . foreclose all prior or subsequent [claims] ... except subsequent municipal liens, and [grant title in] fee simple [to] the purchaser." N.J.S.A. 54:5-87 (emphasis added). Thereafter the judgment "shall be final ... and no application shall be entertained to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit."[8]Ibid. (emphasis added). Thus the Tax Sale Law evidences an intention to impose stricter limits upon the time and the grounds for vacating a judgment of foreclosure than would apply generally under Rule 4:50.
N.J.S.A. 54:5-104.64(a) provides that such judgment "shall give full and complete relief ... to bar the right of redemption, and to foreclose all prior or subsequent... encumbrances" and grant an estate in fee simple to the plaintiff, which is accomplished by recording the judgment. N.J.S.A. 54:5-104.65. Consistent with N.J.S.A. 54:5-87, the law explicitly provides, with respect to an application to reopen the final judgment: "No application shall be entertained to reopen such judgment after three months from the date of the recording thereof ... and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the action." N.J.S.A. 54:5-104.67.
We emphasized the incentives for purchasing a tax sale certificate in Simon v. Rando:
Under the Tax Sale Law, the municipality sells its lien for past due taxes on property at a public sale and obtains the amount owed plus interest and the costs of the sale, N.J.S.A. 54:5-6; N.J.S.A. 54:5-25; N.J.S.A. 54:5-31. The law provides two incentives for purchase of such municipal tax sale certificates. If the certificate is redeemed, the purchaser is reimbursed and receives interest accruing at the rate established by the bid. See N.J.S.A. 54:5-32; N.J.S.A. 54:5-58. If the certificate is not redeemed within two years of the sale, the purchaser may file a complaint to foreclose the right of redemption and, if the certificate is not redeemed by a party before the date set in the court's order of redemption and entry of final judgment, obtain an absolute, indefeasible estate in fee simple. N.J.S.A. 54:5-54; N.J.S.A. 54:5-86; N.J.S.A. 54:5-87; N.J.S.A. 54:5-89.1; R. 4:64-1(d). Quite obviously, the real incentive for participation in a tax sale is the potential to secure marketable title in a foreclosure action.
[Simon, supra, 374 N.J.Super. at 152-53, 863 A.2d 1078.]

II.
Phillipsburg obtained its tax sale certificates for the property at issue in 1999 and 2000. On April 25, 2002, the town filed a complaint in rem to foreclose on certificates No. 99-00126 and No.XXXX-XXXX on the property. On June 26, 2002, the Town posted a notice of foreclosure at the office of the tax collector in the Phillipsburg municipal building.
Several months later, on January 3, 2003, Kerry Gillon, a representative of Community, contacted the office of the *755 Phillipsburg tax collector and expressed Community's interest in purchasing previously issued tax sale certificates on the property. On January 6, the tax collector provided Gillon with the identifying numbers of outstanding tax sale certificates and their holders.
Because the Clerk of the Superior Court held title to the property in trust (as a result of legal actions against its owner that are not in issue here), the Foreclosure Unit required Phillipsburg to obtain a court order allowing the foreclosure to proceed to final judgment against the Clerk. On January 7, Phillipsburg filed its notice of motion for permission to proceed to foreclosure in the uncontested proceeding; the motion was granted by order entered on January 24.
In the meantime, on January 23, 2003, Community obtained, by assignment from RTL Partners, L.P., tax sale certificate No. 93-80, originally purchased by Lamar Life Insurance Company on September 22, 1993 and transferred to RTL on March 26, 1996, giving Community a prior certificate to those held by Phillipsburg. Community claims to have paid $37,531.30 for the assignment; a check evidencing that payment, however, was drawn by "CPR., CORP." to "Tax Lien Trust."[9] Community's representative, Gillon, then attempted to learn the amounts required to redeem Phillipsburg's later-issued certificates, but the information was not forthcoming from the tax collector or the town's attorney.
Community recorded its assignment on January 27. That same day, Gillon contacted the Chief Officer of the Foreclosure Unit, James Colasurdo. He was not yet aware that on January 24, the court had entered the order required to allow judgment to be entered against the Clerk in what was still an uncontested foreclosure action. Colasurdo advised Gillon that the Foreclosure Unit would not issue a final judgment while the town's motion was pending, and that she should file a motion in the Superior Court  "within ten days," according to Gillon. On January 30, 2003, with no application having been filed by Community in the Chancery Division and no opposition having been filed, a final judgment of foreclosure was entered by the Foreclosure Unit.
After entry of the judgment, Community filed its first motion in the foreclosure action, seeking to compel the town to provide the pay-off figures and to accept redemption of its certificates. Community attempted to amend its motion to add a request to vacate the final judgment just three days before the March 7 return date. After argument on that date, Judge Mahon denied Community's original motions on the ground that Community had no interest in the property that would have entitled it to redeem (and therefore to obtain the redemption figures) until its assignment was recorded on January 27. The judge further reasoned that Community had never sought to intervene in the action, and redemption after the filing of a complaint can only be made in the foreclosure action. The judge also noted that Community's "papers are full of uncertified and hearsay statements, with counsel including in his brief and reply papers uncertified facts not within his personal knowledge." The judge refused to hear the untimely motion to vacate and referred Community to N.J.S.A. 54:5-104.67 and Rule 4:50-1 for the "proper *756 procedures" to seek further relief from the judgment.
Community subsequently filed a new motion, this time seeking to intervene in the matter, to vacate the final judgment of foreclosure and to redeem Phillipsburg's certificates. In an oral decision after argument on the return date, April 4, Judge Mahon first "noted that the moving papers are often difficult to fully understand and follow. Little in the way of analysis or full factual background was provided."[10]
Nonetheless, the judge addressed the motion to intervene pursuant to Rule 4:33-1. He considered Community's arguable interest in the property, the fact that the motion was filed within the three-month period not barred by the Tax Sale Law, and Phillipsburg's lengthy delay in bringing and following through on the foreclosure action, and concluded that there was insufficient prejudice shown by Phillipsburg to justify denying intervention. The judge rejected Phillipsburg's contention that Community had paid nominal consideration for its post-complaint assignment, and that its intervention therefore was barred by N.J.S.A. 54:5-89.1. The judge also distinguished Community from the "title raiders" barred in Bron, O & Y, and Savage, in part because it was not dealing with a naïve or unsophisticated assignor, and ruled that Community could intervene.
The judge then addressed Community's motion to vacate the final judgment under Rule 4:50-1(a), (c), and (f), the rules invoked by Community. After finding no grounds for a sub-section (a) motion on account of "mistake, inadvertence, surprise, or excusable neglect," and no "clear and convincing" evidence of "fraud,. . . misrepresentation, or other misconduct of an adverse party under sub-section (c)," the judge noted Community's "fail[ure] to elaborate as to what other circumstances justify relief [under sub-section (f)] ... [but] assume[d] that petitioner is referring again to the efforts made ... to redeem and the subsequent entry of final judgment.. . ."
The judge again noted that "petitioners had no right to demand pay-off figures until it recorded its assignment," and "[i]t was petitioner's responsibility to protect its interests, not plaintiff's or the Foreclosure Unit's. . . ." The judge found Phillipsburg's argument compelling: "that if a final judgment is vacated, the property will go back into trust with the Clerk . . . and will continue to remain in a vacant state, unfit for habitation and accruing back taxes. The town will be forced to secure the building and maintain it to protect public safety." The judge then referred to
"the fact that while petitioner claims that its goal is to rehabilitate the property, petitioner's brief admits that, quote, it may well never own title, close quote, to the property. If petitioner is allowed to pay redemption figures to the town of approximately a hundred fifty thousand dollars, it still must go through the foreclosure process and deal with other outstanding liens on the property which are indicated to be in excess of $200,000."
Finally, the judge noted the absence of proof that Community "is presently able to redeem all outstanding liens," thus casting doubt on the likelihood that the town's intention to secure a new owner to rehabilitate the property would be met.
Community moved for reconsideration, relying on Rule 4:49-2, on the basis of the court's alleged failure to give full consideration to sub-section (f) of Rule 4:50-1, along with evidence that it had recently *757 acquired all outstanding tax sale certificates on the property except for the two certificates held by Phillipsburg. Community also provided a certification that it had the necessary funds to redeem the property "within five days" of an order vacating final judgment.
Citing the policy underlying the Tax Sale Law  to expedite and encourage the conclusion of such proceedings  as well as Community's repeatedly belated actions to put itself in a position to redeem the outstanding certificates, and the importance of finality of judgments generally, the judge found insufficient grounds for reconsidering the previous ruling. Noting that an order vacating the judgment of foreclosure would only undo the transfer of title to Phillipsburg, but would not transfer title to Community, and the obvious additional delay inherent in such an action, the judge concluded: "The town is entitled to an end to litigation at the Trial Court level over this property so that it can prepare the property to be sold at public sale and put back on the tax rolls."

III.
Community claims it had an absolute right to redeem plaintiff's later-issued certificates directly with the tax collector prior to judgment, pursuant to N.J.S.A. 54:5-54; but Community fails to recognize the controlling statute, N.J.S.A. 54:5-98, or the applicable court rule, Rule 4:64-6(b). As we explained above, after the filing of a complaint in foreclosure, the municipal taxing authority may not accept redemption of a tax sale certificate; redemption then can be made only in the foreclosure proceeding. N.J.S.A. 54:5-98. Thus Community's contention that the municipal tax collector wrongfully rejected its attempts to obtain redemption figures and to redeem Phillipsburg's tax sale certificates directly is without merit. See R. 2:11-3(e)(1)(E). Community's only avenue for relief was by timely intervention in the court proceeding.
Prior to judgment, the holder of a tax sale certificate who has an unconditional right to redeem must be permitted to intervene in a tax sale foreclosure action. Gov't. Sec. Co., Inc. v. Waire, 94 N.J.Super. 586, 588, 229 A.2d 664 (App.Div.), certif. denied, 50 N.J. 84, 232 A.2d 147 (1967).
Here, however, Community's right to intervene, in an attempt to vacate a final judgment and exercise a right of redemption, was not absolute, but discretionary. Compare R. 4:33-1 with R. 4:33-2. Rule 4:33-2 provides, in pertinent part:

Upon timely application anyone may be permitted to intervene in an action if the claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
[Emphasis added.]
The issue obviously is whether the judge improperly exercised his discretion.
Because we affirm the judge's decision rejecting Community's motion to vacate the final judgment, Phillipsburg's cross-appeal from the order allowing intervention is moot, and we need not further address it. Suffice it to say that under the circumstances, we can hardly fault the judge for giving Community a full opportunity to pursue its claim, even if a discretionary decision to deny intervention also might have been supportable.[11]

*758 IV.
We focus now on Community's asserted right to vacate the judgment and to redeem Phillipsburg's tax sale certificates. Community's motion to vacate the judgment was made within three months of its entry, and therefore was not barred by the time limits set forth in N.J.S.A. 54:5-87 or 54:5-104.67. But although the Tax Sale Law does not bar Community's motion to vacate the judgment in foreclosure, neither does it require such a motion to be granted. The motion to vacate therefore is governed by Rule 4:50-1.
"The motion for vacation of the judgment [pursuant to Rule 4:50-1] should be granted sparingly, and is addressed to the sound discretion of the trial court, whose determination will be left undisturbed unless it results from a clear abuse of discretion." Pressler, Current N.J. Rules, comment 1.1 on R. 4:50-1, (2005). The motion judge found that Community had failed to satisfy any of the grounds provided by that rule for granting relief from the final judgment. We cannot fault his conclusions that Community had not demonstrated either "mistake, inadvertence, surprise, or excusable neglect," to satisfy section (a) of the rule; or "fraud" under sub-section (c); or "any other reason justifying relief from the operation of the judgment or order" under sub-section (f).[12]
Community admits that it was aware of the pending foreclosure proceeding (and even the imminence of a final judgment of foreclosure), when it first inquired about the redemption of tax sales certificates on the property in January 2003. Moreover, Community provides no explanation for its delay from January 23 to January 27 in recording the assignment, or for its failure to move immediately to intervene in the Superior Court action when it was aware that entry of judgment in foreclosure was imminent.
While Community's motion to vacate was not absolutely barred by any provision of the tax sale certificate, denying the motion was an appropriate decision and a reasonable exercise of discretion under Rule 4:50-1.
There is no merit to Community's suggestion that plaintiff may be equitably estopped from opposing its intervention and redemption. Community cannot here establish an essential element of equitable estoppel: reasonable, detrimental reliance upon the conduct of the party to be estopped. Fraternal Order of Police v. Bd. of Trs. of Police and Firemen's Ret. Sys., 340 N.J.Super. 473, 484-85, 774 A.2d 680 (App.Div.2001) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955)).
Community's argument is based largely upon the numerous communications between its principal and its then attorney on the one hand, and the town attorney, the town tax collector, and the Foreclosure *759 Unit of the Superior Court on the other. While not rising to the level of an equitable estoppel, the various statements admitted by representatives of the town were less than clear in setting forth its intentions albeit all as permitted by the Tax Sale Law.[13] Moreover, equitable estoppel is rarely invoked against a public entity, and then only in the most compelling circumstances. Township of Fairfield v. Likanchuk's, Inc., 274 N.J.Super. 320, 331, 644 A.2d 120 (App.Div.1994); see also Ranchlands, Inc. v. Tp. of Stafford, 305 N.J.Super. 528, 538, 702 A.2d 1325 (App.Div. 1997), aff'd, 153 N.J. 216, 708 A.2d 67 (1998).
Nor is there merit to Community's attempt to invoke another equitable maxim, contending the order appealed from imposes a forfeiture upon it. Community certainly knew the risk it undertook when it paid $37,531.30 to RTL (or the Tax Lien Trust), the prior holder and assignor of the tax sale certificate. Suffering the downside of a financially risky undertaking is not a forfeiture in law or equity.
A decision to deny a Rule 4:50-1 motion, being within the reasonable discretion of the Chancery judge, is one we would not reverse except for an abuse of discretion, which we cannot find in this case.
A strong factor in the Town's favor is the Supreme Court's longstanding recognition of the legislative intent to support the marketability of tax sale certificates, and not their subsequent assignment. Here, it happens to be the municipality itself whose certificates are the subject of Community's attempted redemption. If the holder of a more recent certificate, which undertook the time, effort, and expense to proceed with a foreclosure action, is so easily thwarted by entities like Community, belatedly seeking to intervene, the market for such certificates surely will be diminished by the changed odds on the risk of such a purchase.
In addition, as the judge found, Phillipsburg (as the foreclosing party) has a strong public interest both in getting the property back on the tax rolls, and in eliminating a blight upon the community.
The law clearly gave Community an opportunity, even in the very last days before entry of judgment, to move to intervene in order to exercise its claimed right of redemption. It simply failed to do so, insisting instead upon a procedure long held to be improper: direct redemption after the filing of a complaint in foreclosure. There is no unfairness in the result.

V.
A motion for reconsideration is properly based on "matters ... which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2. See Pressler, supra, comment on R. 4:49-2 (describing Cummings v. Bahr, 295 N.J.Super. 374, 384-85, 685 A.2d 60 (App. Div.1996), as "holding the rule applicable only when the court's decision is based on plainly incorrect reasoning or when the court failed to consider evidence or there is good reason for it to reconsider new information") (emphasis added).
The new information Community supplied, its recent acquisition of additional outstanding tax sale certificates, was not a proper basis for relief. To have granted relief on that basis effectively would have allowed Community to create new facts after being denied relief on then existing facts. That is not the purpose of the *760 court rule providing for a motion for reconsideration.
We affirm, largely for the reasons set forth in Judge Mahon's oral opinions of March 7, April 4, and May 12, 2003, as modified and supplemented herein.
NOTES
[1] The reference is to Article 9 of Chapter 5 of the statutes, N.J.S.A. 54:5-85 to -104.75, governing actions to foreclose a right of redemption.
[2] Under N.J.S.A. 54:5-86, a municipality may institute a foreclosure action after six months from its date of issue.
[3] The holder of a recorded assignment at the time the complaint was filed would be named as a defendant and would be a party.
[4] In that case, we found that the intervenors in two separate cases fell within the disfavored category of "intermeddlers," as discussed in Bron and Wattles.
[5] N.J.S.A. 54:5-98 provides, in pertinent part: "After the complaint has been filed redemption shall be made in that cause only, provided notice of the suit has been filed in the office of the tax collector." (Emphasis added). There is no dispute that notice was properly filed here.
[6] N.J.S.A. 54:5-89.1 provides:

In any action to foreclose the right of redemption in any property sold for unpaid taxes or other municipal liens, all persons claiming an interest in or an encumbrance or lien upon such property, by or through any conveyance, mortgage, assignment, lien or any instrument which, by any provision of law, could be recorded, registered, entered or filed in any public office in this State, and which shall not be so recorded, registered, entered or filed at the time of the filing of the complaint in such action shall be bound by the proceedings in the action so far as such property is concerned, in the same manner as if he had been made a party to and appeared in such action, and the judgment therein had been made against him as one of the defendants therein; but such person, upon causing such conveyance, mortgage, assignment, lien, claim or other instrument to be recorded, registered, entered or filed as provided by law, may apply to be made a party to such action. No person, however, shall be admitted as a party to such action, nor shall he have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint. . . .
[Emphasis added.]
[7] The phrase "redeem down, foreclose up," has been used to describe the procedural rights of successive tax sale certificate holders.
[8] We have long interpreted the imprecise language of N.J.S.A. 54:5-104.67 (as well as N.J.S.A. 54:5-87) "to mean that the three months' limitation applies to all grounds other than `lack of jurisdiction or fraud,' by construing the word `then' as meaning `thereafter.'" Borough of New Shrewsbury v. Block 115, Lot 4, 74 N.J.Super. 1, 9, 180 A.2d 387 (App.Div.1962) (citing Lakewood Tp. v. Block 251, Parcel 34, 48 N.J.Super. 581, 586, 138 A.2d 768 (App.Div.1958)).
[9] As Phillipsburg suggests, the check may evidence only a conditional or contingent arrangement to hold the sum in trust pending the outcome of Community's late attempt to intervene in the foreclosure proceeding.
[10] We were provided with a transcript of the decision only; a transcript of the entire argument should have been provided on appeal.
[11] In allowing Community to intervene, the Chancery judge concluded that its acquisition of the assignment was not nominal. There is neither statute, nor case law, defining "nominal consideration" in this context. In the several cases in which nominal consideration was found, the minimal sums paid were so plainly out of any reasonably relationship to the value of the property as to require no further analysis.

It is suggested by Community that the "consideration" to be measured against the value of the property should include the future cost of redeeming all outstanding liens and certificates, and not only the sum paid to acquire the certificate or judgment or other interest. We need not establish the boundaries of "nominal consideration" here, in light of our decision affirming the denial of Community's Rule 4:50 and Rule 4:49 motions on other grounds. We leave that issue for another day.
[12] Nor did Community's new evidence of its additional acquisitions qualify as "newly discovered evidence" that could not have been presented earlier, under section (b).
[13] The representations by the Foreclosure Unit, based upon the information it had at the time, were clearly made in good faith.