**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4809-17T2

FARGIL REALTY, LLC,

     Plaintiff-Respondent,

v.

BROADWAY AUTO PARTS,
FIRST NATIONAL BANK, n/k/a
WELLS FARGO BANK, NA,
PNC BANK, and STATE OF
NEW JERSEY,

     Defendants.

_____

450 BROADWAY, LLC,

     Appellant.

_____

Argued March 18, 2019 – Decided May 9, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-018831-17.

Clark L. Cornwell, III, argued the cause for appellant.

Susan B. Fagan-Rodriguez argued the cause for respondent.

PER CURIAM

450 Broadway, LLC (Broadway), the proposed intervenor in a tax sale foreclosure action instituted by plaintiff Fargil Realty, LLC (Fargil), against defendant property owner Broadway Auto Parts (Auto), appeals from a May 21, 2018 Chancery Division order, denying its motion to intervene in order to redeem the tax sale certificate and vacate the final judgment of foreclosure entered in favor of Fargil. Having considered the arguments and applicable law, we affirm.

We glean the following facts from the record. Auto owned 450-458 Broadway in Paterson (the property), but failed to pay taxes. As a result, on June 25, 2015, the Paterson Tax Collector sold tax sale certificate number 2016-1748, secured by the property, to SLS I, LLC (SLS), for $17,822.55, which was recorded in the County Clerk's Office on November 2, 2015.[1] On March 16,

---

[1] The Tax Sale Law (the Act), N.J.S.A. 54:5-1 to -137, provides a mechanism for individuals or entities to purchase tax liens from municipalities and initiate foreclosure actions against property owners who are delinquent in paying their property taxes. The foreclosure process begins when a property owner fails to pay the property taxes, as the unpaid balance becomes a municipal lien on the property. N.J.S.A. 54:5-6. "When unpaid taxes or any municipal lien . . . remains in arrears on the [eleventh] day of the eleventh month in the fiscal year

2016, SLS assigned the tax sale certificate to Fargil, which assignment was recorded on April 21, 2016.

After the statutorily-required two-year redemption period expired, on August 9, 2017, Fargil filed a foreclosure complaint, naming Auto as a defendant, as well as other entities with an interest in the property (collectively defendants).[2]  A copy of the summons and complaint was served upon Auto's registered agent on August 10, 2017, along with all other defendants.[3]  On August 15, 2017, Fargil filed a lis pendens with the County Clerk's Office, which was recorded on August 23, 2017, providing notice of the foreclosure action. Based on defendants' failure to file an answer, on Fargil's motion, default was entered and an order setting amount, time, and place of redemption (OST) was

---

when the taxes or lien became in arrears, the collector . . . shall enforce the lien by selling the property . . . ."  N.J.S.A. 54:5-19.  Upon completion of the sale, a certificate of tax sale is issued to the purchaser.  N.J.S.A. 54:5-46.

[2]  A tax foreclosure sale is subject to redemption.  N.J.S.A. 54:5-32.  If the certificate is not redeemed within two years from the date of the tax sale, the certificate holder can file an in personam foreclosure action to bar the right of redemption.  N.J.S.A. 54:5-86(a).  Prior thereto, the certificate holder must, through a "title search of the public record," identify "any lienholder or other persons and entities with an interest in the property that is subject to foreclosure," who then must be named as defendants in the action and served with the foreclosure complaint.  R. 4:64-1(a).

[3]  One defendant was served on August 15, 2017.  The remaining defendants were served on August 10, 2017, along with Auto.

entered on November 9, 2017. The OST fixed the redemption amount at $98,888.78, the Paterson Tax Collector's Office as the place for redemption, and December 26, 2017, as the last day to redeem. The OST also specified that "[a]nything to the contrary notwithstanding, redemption shall be permitted up until the entry of final judgment."

Once the deadline passed, on January 3, 2018, Fargil moved for entry of final judgment. In support, Fargil submitted an affidavit of non-redemption by Sonia Schulman, Paterson's Tax Collector, who averred that "neither the defendants nor any . . . persons acting on their behalf appeared before [her]" by the December 26, 2017 deadline to pay the redemption amount as required by the OST. On February 7, 2018, final judgment was entered on Fargil's behalf.

However, while the foreclosure action had been pending, Auto sold the property to Broadway for $455,000. The contract of sale was entered on November 27, 2017, and the deed was executed on December 21, 2017. The closing took place on January 8, 2018, as a result of which the title company sent the Paterson Tax Collector a certified check in the amount of $119,749.68 to redeem the tax sale certificate, and requested a conforming certificate of redemption. The Paterson Tax Collector received the request on January 12, 2018, and forwarded the certificate to Fargil, requesting its endorsement.

However, Fargil refused, and, instead, attempted to obtain a copy of the sale contract between Broadway and Auto. When those efforts failed, on March 28, 2018, Fargil moved to bar redemption, impose a constructive trust, and permit Fargil to purchase the property for the sale price of $455,000. In support, Fargil submitted certifications from David Farber, a member of Fargil, Fargil's foreclosure counsel, and Fargil's litigation counsel.

Farber certified that he had been interested in acquiring the property for some time and had previously purchased tax sale certificates that "were redeemed by the owner prior to [f]inal [j]udgment." He asserted that before Fargil acquired the tax sale certificate from SLS, the property had been listed "for sale at the asking price of [$750,000,]" and his "offer" of $500,000 had been "accepted." However, when "[he] requested an adjustment of the purchase price" due to concerns about "an environmental issue" on the property, "the contract was cancelled." Thereafter, he "continued to pursue the tax foreclosure."

According to Farber, "[a]fter the foreclosure complaint was filed and Fargil's foreclosure counsel was applying for final judgment, [he] received a telephone call from another investor" inquiring about "the 'investment-worthiness' of the . . . property." He later learned that the "investor" was "the

principal of . . . Broadway" who "had already purchased the property from Auto." As a result, he "asked foreclosure counsel to investigate" the sale and attempted redemption because "[he] was suspicious about the transaction as well as the relationship of the purchase price to the fair market value of the property."

Deborah Feldstein, Fargil's foreclosure counsel, certified that "[w]hile [she] was investigating the attempted redemption, the Foreclosure Unit entered . . . [f]inal [j]udgment on February 7, 2018." During her investigation, she "review[ed] the closing documents" and "requested from the title company a copy of the contract of sale between Auto and [Broadway]." However, "[her] request . . . was refused." She also "reviewed the [e]Courts docket" and confirmed that "a motion to intervene had [not] been filed by [Broadway]."

Susan Fagan-Rodriguez, Fargil's litigation counsel, confirmed that "[b]oth the contract of sale," which she eventually obtained "[o]n or about March 5, 2018," and "the closing took place <u>after</u> the filing of the tax foreclosure complaint[.]" She also confirmed that "no motion to intervene was filed prior to the contract, the closing[,] or the attempted redemption."

A-4809-17T2

On April 2, 2018, Broadway moved to intervene and cross-moved to vacate the final judgment under Rule 4:50-1(a), (e), and (f).[4] In support, Howard Berman, Broadway's counsel, certified that "[t]he transaction was an arm's length transaction that involved [r]eal [e]state [b]rokers and [c]ounsel." To address "adequacy of [c]onsideration[,]" Berman pointed out that Broadway "matched" Fargil's $500,000 offer, "but then received a [$45,000] credit based on environmental issues that were discovered during [Broadway's] due diligence period." He also noted that despite receiving notice from the City of Paterson on January 12, 2018, "that redemption had been tendered[,] [Fargil] allowed the [c]ourt to enter final judgment on February 7, 2018."

On April 30, 2018, the motion judge granted Fargil's motion as an unopposed motion. The memorializing order barred Broadway's "attempt to redeem," as violating the Act. Further, the order imposed "a [c]onstructive trust on the real estate transaction between [Auto] and [Broadway], thereby allowing Fargil . . . to purchase the property . . . under the same terms and conditions of

---

[4]  Under Rule 4:50-1, "the court may relieve a party or the party's legal representative from a final judgment" for "mistake, inadvertence, surprise, or excusable neglect[,]" Rule 4:50-1(a); if "the judgment . . . has been satisfied, released[,] or discharged . . . or it is no longer equitable that the judgment . . . should have prospective application[,]" Rule 4:50-1(e); or "any other reason justifying relief[,]" Rule 4:50-1(f).

the [November 27, 2017] real estate contract." Upon later discovering that Broadway's motion was not considered prior to the entry of the April 30, 2018 order,[5] the judge found "good reason to consider" Broadway's motion as a motion for reconsideration under Rule 4:49-2, but, on May 21, 2018, denied the motion in an oral decision.

In his decision, initially, the judge recited the rules governing intervention. See R. 4:33-1 (allowing intervention as of right "[u]pon timely application . . . if the applicant claims an interest relating to the property" and "the disposition of the action may as a practical matter impair or impede the ability to protect that interest"); R. 4:33-2 (allowing permissive intervention by anyone "[u]pon timely application . . . if the claim or defense and the main action have a question of law or fact in common[,]" but "[i]n exercising its discretion[,] the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties").

Next, relying on N.J.S.A. 54:5-89.1, Simon v. Cronecker, 189 N.J. 304 (2007), and Simon v. Rando, 189 N.J. 339 (2007), the judge stated that "any

---

[5] Because Broadway did not specify its opposition to Fargil's motion, eCourts scheduled the motions for different return dates.

party claiming an interest in the property must intervene in the [tax sale foreclosure] action prior to final judgment being entered." The judge explained:

> The Court has held in [Cronecker] as well as [Rando] that a third-party seeking to redeem a tax sale[] certificate that is currently subject to a foreclosure action must intervene in the action prior to the entrance of final judgment.
>
> That has not . . . been done in this case. And the intervener's motion to intervene at this point is not timely. And no reason exists to vacate the final judgment in this matter. So the [c]ourt has considered . . . the arguments of [Broadway] and has decided that the motion to vacate the final judgment will not . . . be granted.

The judge entered a memorializing order and this appeal followed.

Broadway's "right to intervene, in an attempt to vacate a final judgment and exercise a right of redemption, was not absolute, but discretionary[,]" and thus subject to the trial court determining whether the application was timely and "whether the intervention [would] unduly delay or prejudice the adjudication of the rights of the original parties." Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 172 (App. Div. 2005) (quoting R. 4:33-2). See Twp. of Hanover v. Town of Morristown, 118 N.J. Super. 136, 143 (Ch. Div.), aff'd, 121 N.J. Super. 536 (App. Div. 1972) ("An essential prerequisite to

intervention is timeliness, which should be equated with diligence and promptness.").

Likewise, Broadway's "motion for vacation of the judgment [pursuant to Rule 4:50-1] should be granted sparingly, and is addressed to the sound discretion of the trial court, whose determination will be left undisturbed unless it results from a clear abuse of discretion." Town of Phillipsburg, 380 N.J. Super. at 173 (alteration in original) (quoting Pressler, Current N.J. Court Rules, cmt. 1.1 on R. 4:50-1 (2005)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Here, we discern no abuse of discretion, clear or otherwise, and are satisfied that "there are good reasons . . . to defer to the particular decision at issue." Ibid. The judge determined that Broadway's application to intervene was untimely, which it was, and that Broadway failed to demonstrate meritorious grounds justifying relief under Rule 4:50-1, which it failed to do. Broadway's reliance on the fact that Fargil was aware of the attempted

redemption and still allowed final judgment to be entered was insufficient to justify relief under Rule 4:50-1.

Broadway argues the judge erred in its "tortured application" of Cronecker to the facts of this case because Broadway entered into "an arm's length, bona fide real estate transaction" that was not designed to improperly impede or frustrate Fargil's tax foreclosure action, and "there [was] no suggestion that the purchase price paid by . . . Broadway was nominal."  In Cronecker, our Supreme Court addressed the Act and instituted protections for distressed property owners.  189 N.J. at 319.  The Court noted that the Act "places no restrictions on how a third-party investor arranges for the purchase of property and the redemption of a tax certificate" prior to the filing of a foreclosure complaint. Id. at 320.  However, once a foreclosure complaint is filed, a third-party investor purchasing the property may not redeem the tax certificate without first complying with the Act, "which delineates the competing rights of tax certificate holders and property owners." Id. at 318.

"In the post-foreclosure complaint period," N.J.S.A. 54:5-89.1 and 54:5-98 "mandate intervention by a third-party investor before seeking redemption of a tax certificate." Id. at 320.  "After the filing of the foreclosure complaint, . . . both the property's sale and the redemption procedure are subject to court

11

supervision, primarily to protect property owners from exploitation by third-party investors." Ibid. Thus, "[t]o facilitate judicial review of the adequacy of the consideration offered to the owner, the Act requires that third-party investors who seek either directly or indirectly to acquire the property and redeem the tax sale certificate intervene in the foreclosure action." Ibid.; accord Rando, 189 N.J. at 342-43.

In Cronecker, the Court voided the third-party investor's contracts and "impose[d] constructive trusts in favor of defendant property owners, granting [the tax certificate holders] the opportunity to assume [the third-party investor's] contractual rights" because the third-party investor "did not seek to become a party to the actions before arranging for the redemption of the tax certificates" in violation of the Act. Id. at 338. See also Rando, 189 N.J. at 342 ("one who redeems an interest acquired post-complaint, without first applying for admission to the action, has not made a valid redemption in the cause" (quoting Simon v. Rando, 374 N.J. Super. 147, 158 (App. Div. 2005))).

Thus, Broadway's failure to timely intervene in the foreclosure action is fatal to its position. Broadway moved to intervene in the foreclosure action nearly two months after entry of final judgment and nearly three months after it closed on the property and attempted to redeem. Like the third-party investor

in <u>Cronecker</u>, "before redeeming or causing to be redeemed the tax certificate," Broadway "had the duty to apply for admission to the foreclosure action[]" and "did not have a right to tender funds to the tax collector without prior judicial authorization." 189 N.J. at 337. We also conclude that a constructive trust was properly imposed as a safeguard to Fargil's property rights. <u>Id.</u> at 338.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13