887 A.2d 1203 (2005)
382 N.J. Super. 201
CHEROKEE EQUITIES, L.L.C., Plaintiff,
v.
Mary E. GARAVENTA, Individually and as Executrix of the Estate of Daniel Garaventa; Ida Schettino, Her Heirs, Devisees and Personal Representatives and Their or any of Their Successors in Right, Title and Interest and John Doe Husband of Ida Schettino, Said Name John Doe Being Fictitious; *1204 Mrs. Daniel Garaventa, Wife of Daniel Garaventa; Rudolph Novotny, His Heirs, Devisees and Personal Representatives and Their or any of Their Successors in Right, Title and Interest; State of New Jersey, Defendants.
Duggan Partners, L.L.C., Plaintiff,
v.
Mary E. Garaventa, Her Heirs, Devisees and Personal Representatives and His, Hers, Their or any of Their Successors in Right, Title and Interest, John Doe, Husband of Mary E. Garaventa, Said Name of John Doe Being Fictitious; Ida Schettino, Her Heirs, Devisees and Personal Representatives His, Hers, Their or any of Their Successors in Right, Title and Interest; John Doe, Husband of Ida Schettino, Said Name John Doe Being Fictitious; Vincent Schettino, His Heirs, Devisees and Personal Representatives and His, Hers, Their or any of Their Successors in Right, Title and Interest; Mrs. Vincent Schettino, Wife of Vincent Schettino; Victor Schettino, His Heirs, Devisees and Personal Representatives and His, Hers, Their or any of Their Successors in Right, Title and Interest; Mrs. Victor Schettino, Wife of Victor Schettino; Unknown Owners or Claimants, His or Her, Heirs, Devisees and Personal Representatives and His, Hers, Their or any of Their Successors in Right, Title and Interest; and the State of New Jersey, Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County.
Decided October 14, 2005.
*1205 Keith A. Bonchi, Atlantic City, for plaintiff Cherokee Equities, L.L.C. (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill).
Richard O. Venino, Jr., Sea Girt, for Proposed Intervenor Duggan Partners, L.L.C. (Richard O. Venino, Jr.).
ALEXANDER D. LEHRER, P.J.Ch.
On September 26, 1995, the tax collector of the City of Long Branch sold Rudolph Novotny tax sale certificate (TSC) 95-101 on vacant property located at Block 410, Lot 21 a/k/a 160 Long Branch Ave., Long Branch, New Jersey. Mr. Novotny never paid any subsequent taxes. As a result, the following year, the City of Long Branch held a tax sale and sold certificate No. 96-112 on the same property. TSC 96-112 was originally purchased by FUNDCO and subsequently assigned to Plaintiff, Cherokee Equity, LLC, on January 16, 2003. After acquiring an assignment of tax sale certificate 96-112, Cherokee paid all subsequent taxes.
On or about October 8, 2003, Cherokee filed a foreclosure action on TSC 96-112 bearing Docket No. F-18023-03 and filed a notice of lis pendens with the Monmouth County Clerk on December 4, 2003.
As Cherokee proceeded with the foreclosure on TSC 96-112, it served Novotny by publication. During the foreclosure, Duggan Partners, LLC's attorney searched the probate records of Monmouth County for the Last Will & Testament of Rudolph F. Novotny and determined that Nancy Mazza was the Executrix of his estate. Duggan's attorney sent the Executrix correspondence on October 20, 2004 indicating that he represented a client who was interested in obtaining an assignment of TSC 95-101 owned by the estate. He offered the redemption sum of $3,863.37 and enclosed a proposed assignment. In correspondence dated November 1, 2004, the Executrix sent back the executed assignment and, on November 19, 2004, a check was forwarded to complete the transaction. The same information on the Novotny estate and opportunity to purchase the assignment was available to Cherokee, but it chose a different course of action.
The assignment of TSC 95-101, dated October 22, 2004, was recorded in the Monmouth County Clerk's Office on December 8, 2004. The consideration of $3,863.37 represented the full redemptive *1206 value of TSC 95-101 as of the date of its assignment.
On January 5, 2005, Duggan filed a complaint in the Superior Court of New Jersey to foreclose TSC 95-101 bearing Docket No. F-395-05. Duggan's foreclosure proceeded through the entry and service of an order setting time, place and amount for redemption. Both matters have been consolidated here for decision.
As the owner of TSC 95-101, Duggan seeks intervention in the foreclosure of TSC 96-112, for the purpose of redeeming Cherokee's subsequent tax sale certificate. Cherokee opposes Duggan's motion asserting that Duggan is barred by N.J.S.A. 54:5-89.1 from intervening.
The provisions of New Jersey Tax Sale Law (N.J.S.A. 54:5-1 to -104.75) are to be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured. Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964), N.J.S.A. 54:5-85; Wattles v. Plotts, 120 N.J. 444, 451-52, 577 A.2d 131 (1990). Protecting the marketability of tax titles enables municipalities to maximize the recovery of unpaid property taxes and return property to the tax rolls.
The Legislature and the courts have looked with disfavor on those described as "intermeddlers"; "title raiders"; or "heir hunters". See. e.g., O & Y Old Bridge Dev. Corp. v. Cont'l Searchers, Inc., 120 N.J. 454, 577 A.2d 137 (1990); Wattles, supra, 120 N.J. at 444, 577 A.2d 131; Bron, supra, 42 N.J. at 87, 199 A.2d 625; Savage v. Weissman, 355 N.J.Super. 429, 810 A.2d 1077 (App.Div.2002).
In Savage, supra at 436, 810 A.2d 1077 the court stated:
When municipal taxes are delinquent for the period stated by statute, a lien arises on the land on which the taxes are assessed, N.J.S.A. 54:5-6, and the municipality may enforce the lien by selling the property as prescribed by statute. N.J.S.A. 54:5-19. The officer holding the sale delivers to the purchaser a certificate of sale. N.J.S.A. 54:5-46.
A tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority. Chelsea Laundry Co. v. Toscano, 14 N.J.Super. 496, 500, 82 A.2d 473 (Ch.Div.1951). Furthermore, the interest of the holder of the tax sale certificate is entirely subordinate to the statutory right of redemption of the property owner. This right of redemption can be exercised up to the date fixed by the court barring the right of redemption. Manning v. Kasdin, 97 N.J.Super. 406, 417, 235 A.2d 219 (App.Div.1967), certif. denied, 51 N.J. 182, 238 A.2d 469 (1968). See generally, C. Zachary Seltzer, New Jersey Law, Tax Title Foreclosures, 13-213 to -214 (1971).
After two years, the purchaser of the tax sale certificate, his heirs or assigns, may commence a proceeding known as a tax sale foreclosure to foreclose or bar the property owner's right of redemption. N.J.S.A. 54:5-86. The parties to this proceeding are the property owner and the holders of existing interests in the property. Bron, supra, 42 N.J. at 92, 199 A.2d 625. The property owner, his heirs, a holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits pursuant to N.J.S.A. 54:5-7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner prescribed by statute. N.J.S.A. 54:5-54. A judgment of the Superior Court in an action to foreclose *1207 the right of redemption may give full relief to bar the right of redemption and to foreclose all prior or subsequent alienation and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser. [N.J.S.A. 54:5-87.]
In Simon v. Rando, 374 N.J.Super. 147, 154, 863 A.2d 1078 (App.Div.), certif. granted, 183 N.J. 585, 874 A.2d 1104 (2005), the Court stated:
Where one acquires an interest in the property by assignment after the complaint is filed, the Tax Sale Law imposed additional procedural and substantive requirements. Pursuant to N.J.S.A. 54:5-89.1, a person with an unrecorded assignment of an interest may record the assignment and "apply to be made a party of the action." Absent such an application, the person is bound by "the proceedings ... in the same manner as if he had been made a party to and appeared in [the foreclosure] action, and the judgment ... had been made against him as one of the defendants...." N.J.S.A. 54:5-89.1; cf. N.J.S.A. 54:5-90 to -91 (unknown owners of recorded interests). If the person does not "apply to be made a party," the person cannot redeem with the tax collector because such redemption is not "made in that cause." N.J.S.A. 54:5-98.
After the filing of a complaint in foreclosure, the municipal taxing authority may not accept redemption of a tax sale certificate; redemption then can be made only in the foreclosure proceeding. N.J.S.A. 54:5-98. One who acquires an interest in such property after the filing of a complaint has neither the right to redeem nor to participate in the foreclosure action if the interest was acquired "for a nominal consideration". N.J.S.A. 54:5-89.1.
In Petak v. City of Paterson, 291 N.J.Super. 234, 244-45, 677 A.2d 244 (App. Div.), certif. denied, 146 N.J. 566, 683 A.2d 1162 (1996), the Court stated:
The holder of a tax sale certificate acquires an inchoate interest encompassing three distinct rights:
The holder has the right to receive the sum he paid for the certificate with interest at the redemption rate for which the property was sold. N.J.S.A. 54:5-58. The holder has the right to redeem from any other holder [of] a subsequently issued tax sale certificate. Realty Sales Corp. v. Payne, 76 N.J.Super. 59, 61-62, 183 A.2d 772 (Ch.Div.1962), aff'd. o.b., 78 N.J.Super. 504, 189 A.2d 458 (App. Div.1963), certif. denied, 41 N.J. 162, 195 A.2d 305 (1963). Finally, and most important, the holder has the right to acquire title by foreclosing the equity of redemption of all outstanding interests including the owner's. N.J.S.A. 54:5-8 et seq.

[Township of Jefferson [v. Block 447A, Lot 10], 228 N.J.Super. [1,] 4-5, 548 A.2d 521 [(App.Div.1998)].]
The holder of a prior tax sale certificate has an absolute right of redemption until that right is cut off by a judgment in foreclosure. By contrast, the holder of a subsequent tax sale certificate can cut off a prior certificate holder's right of redemption only by bringing an action to foreclosure. See Realty Sales v. Payne, 76 N.J.Super. 59, 61-62, 183 A.2d 772 (Ch. Div.1962), aff'd, 78 N.J.Super. 504, 189 A.2d 458 (App.Div.), certif. denied, 41 N.J. 162, 195 A.2d 305 (1963).
The effect of a final judgment of foreclosure under the Tax Sale Law is to vest title to the property in fee simple. N.J.S.A. 54:5-87.
*1208 In Simon v. Rando, supra, 374 N.J.Super. at 152-53, 863 A.2d 1078 the Court further explained:
Under the Tax Sale Law, the municipality sells its lien for past due taxes on property at a public sale and obtains the amount owed plus interest and the costs of the sale, N.J.S.A. 54:5-6; N.J.S.A. 54:5-25; N.J.S.A. 54:5-31. The law provides two incentives for purchase of such municipal tax sale certificates. If the certificate is redeemed, the purchaser is reimbursed and receives interest accruing at the rate established by the bid. See N.J.S.A. 54:5-32; N.J.S.A. 54:5-58. If the certificate is not redeemed within two years of the sale, the purchaser may file a complaint to foreclose the right of redemption and, if the certificate is not redeemed by a party before the date set in the court's order of redemption and entry of final judgment, obtain an absolute, indefeasible estate in fee simple. N.J.S.A. 54:5-54; N.J.S.A. 54:5-86; N.J.S.A. 54:5-87; N.J.S.A. 54:5-89.1; R. 4:64-1(d). Quite obviously, the real incentive for participation in a tax sale is the potential to secure marketable title in a foreclosure action.
Clearly, as a holder of a prior tax sale certificate, Duggan has the right to redeem Cherokee's subsequent lien. See N.J.S.A. 54:5-54, Tax Investment Corporation of New Jersey v. Dilts, 131, N.J.L. 437, 36 A.2d 896 (Sup.Ct.1944); Township of Jefferson v. Block 447A, Lot 10, 228 N.J.Super. 1, 548 A.2d 521 (App.Div.1988); and Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J.Super. 159, 881 A.2d 749 (App.Div.2005).
As Duggan was not initially joined as a party defendant in the foreclosure of TSC 96-112, it must seek to intervene in order to redeem the plaintiff's tax sale certificate. N.J.S.A. 54:5-98; Simon v. Rando, supra., 374 N.J.Super. 147, 863 A.2d 1078 (App.Div.2005), certif. granted, 183 N.J. 585, 874 A.2d 1104 (2005); and Town of Phillipsburg v. Block 1508, supra.
Cherokee urges this Court deny Duggan the right to intervene and redeem claiming Simon v. Rando, supra prohibits same. Cherokee asserts that Simon prohibits the acquisition of a redeemable interest in the premises after a foreclosure complaint has been filed if the acquiring party had knowledge of the proceeding. The Court does not agree. Property interests, whether title, mortgage or prior tax liens must be protected once a foreclosure complaint has been filed even if the acquiring party had knowledge of the foreclosure.
Prior to the filing of a foreclosure complaint, the right to redeem is governed solely by N.J.S.A. 54:5-54. The consideration paid for an interest in the premises prior to the filing of the foreclosure is not an issue. However, interests acquired after the foreclosure complaint is filed must move for an order permitting intervention to determine whether the acquisition was in contravention of N.J.S.A. 54:5-89.1. Redemptions tendered by parties who have not intervened in the action are ineffective.
The fact that a tax foreclosure action has been instituted should not suspend the rights of parties to freely alienate and trade their interests provided that N.J.S.A. 54:5-89.1 is not offended. To hold otherwise would invalidate property rights by depriving the owners of the ability to sell, trade or otherwise dispose of those interests, including the right to sell such interests at a reasonable discount.
As stated by Justice Francis in Jones v. Haridor Realty Corp., 37 N.J. 384, 391, 181 A.2d 481 (1962): There is no doubt that the right to acquire, own and dispose of real property is within the protective scope of the Fourteenth Amendment, or *1209 that such right is recognized by Article I, paragraph 1 of our State Constitution.
In a market economy, the right to freely alienate property interests is one of the most basic rights guaranteed by law. Without buyers and sellers being able to compete in an open market the value of these protected rights would be destroyed or diminished. The right of free alienation is explicitly recognized in N.J.S.A. 46:3-5 which provides: "[A]ny freeholder may give, sell or align the real estate whereof he is or at anytime shall be seized in fee simple, or any part thereof, at his pleasure...."
The post-complaint sale and purchase of redeemable property interests is implicitly permitted by N.J.S.A. 54:5-89-1. This statute only prohibits post-filing transfers that are made for "nominal, little or no consideration". Transfers made for more than nominal consideration, by clear language of this statute, are permissible.
Post-complaint acquisition of a property interest creating the right to redeem does not undermine the Tax Sale Law. The holder of a tax sale certificate acquires a lien, not the title itself. A lien may be redeemed by anyone holding an interest protected by N.J.S.A. 54:5-54. Should a lien be redeemed, the lienholder is entitled to receive all of the taxes initially and subsequently paid, together with penalties, interest (generally at 18%), costs of suit, search fees and counsel fees.
In virtually every case of lien redemption, the lienholder receives a profit. The purchase of a tax sale certificate is not the equivalent of the purchase of the underlying title, there is no guarantee that a foreclosure will ultimately result in the acquisition of title. The risks of lien speculators, such as Cherokee and Duggan, are articulated by Justice Jacobs in his dissent in Dvorkin v. Dover Tp., 29 N.J. 303, 324, 148 A.2d 793, (1959) wherein he states: "The common law gave full recognition to the concept that purchasers of tax sale certificates are speculators who generally seek large profits from small investments and who may fairly be treated as acting at their peril...."
If lien speculators are successful in procuring title through foreclosure of the equity of redemptions, they do so at the expense of the title owners, mortgagees and prior tax certificate holders whose property interests the speculator extinguishes. The law permits such a remedy; however, the law should not be interpreted to protect a lien speculator from a competing speculator simply by filing a foreclosure complaint.
Post filing purchases do not subvert the purpose of the Tax Sale Law. Municipalities receive payment of delinquent taxes from lien purchasers. If the original holder of a lien does not pay the subsequent taxes, then a subsequent lien will be sold by the municipality. Municipalities receive complete payment of delinquent taxes plus interest irrespective of whether a lien on a property is redeemed or not.
Cherokee seeks to acquire title by extinguishing the property rights of the parties in interest through a strict foreclosure. Unlike a mortgage foreclosure which provides for a judicial sale, competitive bidding and the prospect for the generation of a surplus, no such prospect exists in a strict foreclosure; either there is redemption, or title and all property rights are lost. If the owner of the foreclosed property right is unable to redeem, only the lien speculator benefits.
Cherokee asserts that the sale of post-complaint interests only serves to benefit the person acquiring that interest. The Court does not agree. Clearly, the seller of the interest benefits where a post complaint *1210 transfer has been made for more than nominal, little, or no consideration.
Often the seller is among society's most unfortunate, losing all they own because they do not have the funds to redeem. If the seller receives more than nominal consideration there is a benefit, as some amount is realized to help fund a new start, otherwise all is lost in strict foreclosure. Post-complaint trading for more than nominal consideration is a benefit to society and serves a valid public purpose.
For the reasons stated above, this Court holds one who acquires a post-complaint property interest with knowledge of a pending foreclosure, may intervene to obtain redemption if the interest has not been acquired for nominal, little or no consideration.
In determining whether the post complaint acquisition of a property interest has been made for nominal, little, or no consideration, it is against the reasonable value of the interest acquired such inquiry must be measured.
N.J.S.A. 54:5-89.1 clearly recognizes distinctions between property interests. It provides:
"In any action to foreclosure the right of redemption in any property sold for unpaid taxes or other municipal encumbrance or lien upon such property, by or through any conveyance, mortgage, assignment, lien or any instrument which, by any provision of law could be recorded... shall be bound by the proceedings in the action so far as such property is concerned ...."
When analyzing whether the provisions of N.J.S.A. 54:5-89.1 can be invoked to bar the admission or intervention of a party to an existing foreclosure, it is the reasonable value of the interest acquired that determines whether the purchase was for nominal, little or no consideration. To do otherwise would be economically and commercially unreasonable.
If a title interest is acquired post complaint, that interest must be measured against the reasonable value of the title. If a mortgage interest is acquired post-complaint, that interest must be valued against the reasonable value of the mortgage. If a tax sale certificate is acquired post-complaint, the determination of whether or not the consideration for its acquisition is for nominal, little, or no consideration must be directed against the reasonable value of the tax sale certificate, which is the redemptive value.
Here, Duggan paid the full redemptive value for TSC 95-101, said payment was not for nominal, little, or no consideration prohibited by N.J.S.A. 54:5-89-1.
The Plaintiff argues that the consideration paid by Duggan for TSC 95-101 must be measured against the fair market value of the premises. Here, the approximate fair market value of the premises is $440,000 and the value of the tax sale certificate is approximately $4,000. To hold, one must be compelled to pay $440,000 for a certificate worth $4,000.00 would have the effect of rendering the certificate worthless. There is no market for a tax sale certificate that sells for 110 times its value.
If the lien purchased post-complaint should be redeemed, Duggan is only entitled to the redemptive value of the lien, plus any subsequent taxes it has paid, and certain costs of suit and counsel fees as permitted by statute and rule. To require the payment of $440,000 for an assignment of a tax sale certificate that could be redeemed for $4,000, plus counsel fees and costs, is an economic unreality that would destroy legitimate vested property rights *1211 without just compensation, contrary to law and public policy.
The payment of full redemptive value for Tax Sale Certificate 95-101 does not violate the prohibitions of N.J.S.A. 54:5-89.1 and Duggan may intervene and redeem TSC 96-112.