161 A.3d 775

JNH FUNDING CORPORATION, PLAINTIFF, v. ALI M. AYED; HIGHLAND HOUSE CONDOMINIUM ASSOCIATION, INC; JANE DOE, WIFE OF ALI M. AYED, SAID NAME JANE DOE BEING FICTITIOUS, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Hudson County

Decided: March 21, 2017

*Howard D. Lipstein* for plaintiff.

*Amy E. Forman* for defendant Highland House Condominium Association (*McGovern Legal Services, LLC*, attorneys).

SARKISIAN, P.J.Ch.

Introduction

Presently before the court is plaintiff's motion to vacate a redemption of a tax sale certificate, Tax Sale Certificate No. 2006–1326, by defendant Highland House Condominium Association, Inc. ("Highland House"). This matter arises out of plaintiff's action to foreclose a tax sale certificate that it purchased on June 22, 2006, at a public sale, for defendant Ali M. Ayed's ("Ayed") property located at 2700 Kennedy Boulevard, Unit 114, Jersey City, New Jersey, which is a unit within defendant Highland House.

On November 22, 2016, plaintiff filed an order to show cause with a verified complaint to vacate the redemption. On December 29, 2016, the court denied the order to show cause without prejudice to seek the relief by motion. Plaintiff filed the instant motion on January 31, 2017. The motion was adjourned with the parties attempting, without success, to resolve their differences. It was ultimately set down for a plenary hearing on March 17, 2017, with the court, in its letter of March 10, 2017, identifying the

court's need to hear testimony and consider documentary evidence on the communications between counsel primarily in early September 2016, which led to the defendant's redemption of the subject tax sale certificate on September 19, 2016.

Statement of Operative Facts and Contentions

On June 22, 2006, plaintiff purchased Tax Sale Certificate No. 2006–1326, which related to Ayed's property at 2700 Kennedy Boulevard, Unit 114, Jersey City, at a public sale. The Tax Sale Certificate was recorded on August 15, 2007.

On March 10, 2014, plaintiff filed the instant foreclosure complaint seeking to foreclose the tax sale certificate, naming Ayed and Highland House Condominium Association as defendants. The order of final judgment, entered on March 11, 2016, noted that plaintiff was entitled to the sum of $19,472.29 plus interest from the tax foreclosure sale. However, on June 24, 2016, Judge Innes granted plaintiff's motion for an order vacating judgment. On July 25, 2016, Judge Innes entered an order fixing the amount, time, and place for redemption, which established the amount due as $20,756.15 and the redemption date to be September 8, 2016. The order notes that redemption should be permitted up until the entry of final judgment.

However, Highland House had also recorded a lien for unpaid assessments against the property in the amount of $5,018.03 on October 8, 2013, and recorded a second lien in the amount of $8,144.24 on December 28, 2015. Thereafter, on January 6, 2014, approximately two months before plaintiff had filed its foreclosure action, Highland House filed its own foreclosure complaint against Ayed under Docket No. F–000222–14. Ultimately, Highland House was awarded a final judgment of foreclosure in that action on September 26, 2016, in the amount of $8,330.77.

The court's focus for the plenary hearing began in early September 2016 regarding the communications between plaintiff's attorney, Howard Lipstein, and the defendant's attorney, Tiffany Byczkowski, of McGovern Legal Services. The court considered

their testimony and exhibits marked into evidence on March 17, 2017.

On September 2, 2016, Highland House's counsel contacted plaintiff's counsel to discuss plaintiff assigning the tax sale certificate to Highland House or plaintiff paying off the Association's liens. Mr. Lipstein indicated his client was interested in acquiring title to the property and countered with inquiring on the amount defendant would require from plaintiff to satisfy their lien for condominium maintenance charges. Defendant's attorney had made plaintiff's attorney aware of their pending foreclosure action.

On September 6, 2016, plaintiff informed Highland House that it intended to complete the foreclosure action to obtain title to the property and repeated his client's interest in satisfying the defendant's lien. Plaintiff's attorney was advised by defendant's attorney that once she had a current account ledger she would forward it to him. Lipstein testified at the hearing that he was under the mistaken opinion that the Condominium Association, as a named defendant in his action, would have the right to redeem the tax sale certificate.

On September 7, 2016, a telephone conversation took place between the attorneys, in which plaintiff's counsel advised he would have an answer shortly on whether he would consider an assignment/sale of the tax sale certificate versus the option of paying off the condominium lien. His client wanted a further explanation of a charge on the lien account ledger. Lipstein agreed to extend the redemption time for three weeks in order to allow the settlement negotiations to continue. Plaintiff's attorney then sent an email the same day to Highland House's counsel advising her that it would extend the period of time for Highland House to redeem the tax sale certificate by three weeks from the September 8, 2016, date set by Judge Innes's July 25, 2016 order, "based upon [the parties'] continuing negotiations regarding this matter." Plaintiff's counsel admitted at the hearing that, at the time he agreed to this extension, he was not aware that Highland House had no right to redeem under *N.J.S.A.* 54:5-54.

On September 13, 2016, plaintiff offered to pay Highland House $18,000 to prevent Highland House from redeeming the tax certificate. On September 16, 2016, the defendant's Board rejected plaintiff's offer to pay $18,000 for its lien because it wished to redeem the tax certificate. When defendant's attorney conveyed this decision to plaintiff's attorney, Lipstein indicated he would take action to void the redemption and compel the defendant to accept his client's offer to satisfy the defendant's lien.

On September 19, 2016, Highland House redeemed the tax sale certificate in the amount of $23,722.98. However, to date, plaintiff has refused to accept the money paid by defendant to redeem the certificate and has refused to surrender the tax certificate.

On February 2, 2017, the property went to a sheriff's sale in the Highland House action under Docket No. F–000222–14, at which point the property sold to Highland House, which is now the owner of the property. Plaintiff states that it was not notified of the sheriff's sale.

Plaintiff argues that Highland House's purported redemption of its tax sale certificate is null and void because Highland House is not a party eligible to redeem a tax sale certificate under *N.J.S.A.* 54:5–54. In opposition, Highland House argues that: (1) as a foreclosing condominium association it has a similar status as a mortgagee, which would be entitled to redeem the tax sale certificate under the statute; and (2) any issues regarding its eligibility to redeem the tax sale certificate on September 19, 2016, are now moot because it purchased the property at the sheriff's sale on February 2, 2017, and thus it would be eligible to redeem the tax sale certificate under the statute.

Discussion

A tax sale certificate creates a lien on the property subject to the property owner's right of redemption under *N.J.S.A.* 54:5–54. As noted by the Appellate Division:

A tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority. Furthermore, the interest of the holder of the tax sale certificate is entirely subordinate to the

statutory right of redemption of the property owner. This right of redemption can be exercised up to the date fixed by the court barring the right of redemption. [*Savage v. Weissman*, 355 *N.J.Super.* 429, 436, 810 *A.*2d 1077 (App. Div. 2002).]

▮ Public policy encourages foreclosure of tax sale certificates. Under *N.J.S.A.* 54:5–85, the tax certificate foreclosure statutes "shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured." As a general rule, the public policy in New Jersey favors the foreclosure of these liens so as to assist municipalities in the collection of delinquent taxes. *See, e.g., Lonsk v. Pennefather*, 168 *N.J.Super.* 178, 182, 402 *A.*2d 259 (App. Div. 1979) ("[T]he public policy in this State is to encourage tax sale foreclosure so as to assist municipalities in the collection of delinquent taxes"); *Caput Mortuum, LLC v. S & S Crown Services, Ltd.*, 366 *N.J.Super.* 323, 334, 841 *A.*2d 430 (App. Div. 2004). The tax sale certificates are sold so that municipalities may "generate funds owed by delinquent taxpayers because '[m]unicipalities depend on the collection of property taxes and other assessments to fund the many services provided to residents.'" *Id.* at 335, 841 *A.*2d 430. Thus,"[i]t is in the public interest to encourage parties to purchase tax liens to enable municipalities to receive their lost tax revenues." *Ibid.*

At the same time however, despite the important public policy considerations underlying the sale of tax sale certificates, "[t]he Legislature and the courts have looked with disfavor on those described as 'intermeddlers'; 'title raiders'; or 'heir hunters'." *Cherokee Equities, L.L.C. v. Garaventa*, 382 *N.J.Super.* 201, 206, 887 *A.*2d 1203 (Ch. Div. 2005) (citing *O & Y Old Bridge Dev. Corp. v. Cont'l Searchers, Inc.*, 120 *N.J.* 454, 577 *A.*2d 137 (1990); *Wattles v. Plotts*, 120 *N.J.* 444, 444, 577 *A.*2d 131 (1990); *Bron v. Weintraub*, 42 *N.J.* 87, 87, 199 *A.*2d 625 (1964); and *Savage v. Weissman*, 355 *N.J.Super.* 429, 810 *A.*2d 1077 (App. Div. 2002)).

▮ "In order to effectuate the remedial objectives of the statute, the Legislature made municipal liens paramount to prior claims and set forth a detailed procedure for the sale, redemption,

and foreclosure of such liens." *Caput Mortuum, LLC, supra*, 366 *N.J.Super.* at 334–35, 841 *A.*2d 430. When a property owner fails to pay property taxes or other municipal assessments on a property, a first priority lien is created. *N.J.S.A.* 54:5–6 to -9. The lien attaches to the property and does not become a personal liability of the taxpayer. *N.J.S.A.* 54:5–6. Thereafter, when a lien remains in arrears, the tax collector must "enforce the lien" by selling the lien as a tax sale certificate. *N.J.S.A.* 54:5–19. After two years from the date of the sale of the tax sale certificate, the purchaser of the tax sale certificate may commence a tax sale foreclosure proceeding to bar the right of redemption. *N.J.S.A.* 54:5–86. The proper parties to this action "are the property owner and the holders of existing interests in the property." *Savage, supra*, 355 *N.J.Super.* at 436, 810 *A.*2d 1077. However, the parties identified in *N.J.S.A.* 54:5–54 may redeem the tax sale certificate up until final judgment is entered barring the right to redemption. *See Savage, supra*, 355 *N.J.Super.* at 436, 810 *A.*2d 1077; *N.J.S.A.* 54:5–87 (providing that a judgment may give full relief "to bar the right of redemption and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser"). Accordingly, "[t]he effect of a final judgment of foreclosure under the Tax Sale Law is to vest title to the property in fee simple." *Cherokee Equities, LLC v. Garaventa*, 382 *N.J.Super.* 201, 208, 887 *A.*2d 1203 (Ch. Div. 2005) (citing *N.J.S.A.* 54:5–87).

The redemption of tax sale certificates is governed by *N.J.S.A.* 54:5–54, which provides in full:

> Except as hereinafter provided, *the owner, his heirs, holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land* sold for municipal taxes, assessment for benefits pursuant to R.S.54:5–7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector, or to the collector of delinquent taxes on lands of the municipality where the land is situate, for the use of the purchaser, his heirs or assigns, the amount required for redemption as hereinafter set forth.

The tax collector shall provide to any party entitled to redeem a certificate pursuant to this section two calculations of the amount required for redemption within a calendar year at no cost. The governing body of a municipality may, by ordinance, require a fee not to exceed $50 for each subsequent calculation requested of the tax collector. A request for a redemption calculation shall be made in writing to the tax collector.

[Emphasis added.]

■ Accordingly, a property owner, holder of a prior outstanding tax lien certificate, mortgagee, or occupant of the land may redeem the tax sale certificate at any time.

New Jersey courts have construed this provision narrowly, limiting the power to redeem a tax sale certificate to that limited group of individuals. *See, e.g., Caput Mortuum, LLC, supra,* 366 *N.J.Super.* at 323, 841 *A.*2d 430. In 1994, the language of the statute was amended to its current form, eliminating a provision that allowed any "other person having an interest in land sold for municipal liens" to redeem as well. *Id.* at 331, 841 *A.*2d 430. As noted by the Appellate Division:

The plain language of the statutory amendment demonstrates a clear legislative intent to eliminate the rights of those persons who did not have a sufficient interest in the property to warrant extension of the right of redemption to them in favor of more protection for the owner of the property, as well as the holder of the certificate.

[*Id.* at 331–32, 841 *A.*2d 430].

Accordingly, with this in mind, courts have determined that judgment creditors, who do not rise to the level of "owner" of the subject property, have no right of redemption.[1] *Id.* at 333–34, 841 *A.*2d 430.

---

[1] The Appellate Division, in *Caput Mortuum, LLC, supra,* 366 *N.J.Super.* at 333–34, 841 *A.*2d 430 noted that judgment creditors do not acquire the status of an owner until they purchase the property at an execution sale and that judgment creditors are not included under the aegis of mortgagees permitted to redeem as a mortgagee "has a contractual security interest in the property but no claim against the person absent a note or other personal obligation," and a judgment creditor, who could obtain a personal judgment and satisfy its judgment in a number of ways, does not have the same interest in property that a mortgagee does.

■ Here, defendant Highland House first argues that it should be considered a "mortgagee" under *N.J.S.A.* 54:4–54, and thus eligible to redeem the tax sale certificate, because the New Jersey Condominium Act, *N.J.S.A.* 46:8B–1 *et seq.*, provides condominium associations with many of the same rights as mortgagee foreclosing on a mortgage. Specifically, in support of this proposition, defendant cites to *N.J.S.A.* 46:8B–21(a), which provides:

The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

*N.J.S.A.* 46:8B–21(b) establishes a condominium association's lien under *N.J.S.A.* 46:8B–21(a) as a high priority lien, generally having priority over other encumbrances, including mortgages. However, *N.J.S.A.* 46:8B–21(b) specifically exempts "municipal liens or liens for federal taxes" from the super-priority of the condominium association's lien.

Despite defendant's assertions to the contrary, the fact that a condominium association is given the rights of a lienholder with a "super-priority" does not qualify it as a "mortgagee" under *N.J.S.A.* 54:4–54. Given the narrow scope with which courts interpret the parties entitled to redeem a tax sale certificate, it would be improper to declare a condominium association lien holder to be a mortgagee, "who has a contractual security interest in the property," as both have definitively different legal definitions. *Caput Mortuum, LLC, supra,* 366 *N.J.Super.* at 333–34, 841 *A.2d*

430. While a condominium association lienholder may be in a similar position with similar rights to a mortgagee, it is still not a mortgagee by definition. The fact that the condominium association's lien is explicitly subordinated to the tax sale certificate by *N.J.S.A.* 46:8B–21(b) further indicates that defendant here should not be considered a "mortgagee" with the ability to redeem the tax sale certificate.

██ Next, defendant argues that plaintiff's motion should be denied as moot because defendant is now the owner of the property, pursuant to its purchasing of the property at the sale held in defendant's foreclosure action on February 2, 2017, which was held while the instant motion was pending. In support of this proposition, defendant cites *Caput Mortuum, LLC, supra,* 366 *N.J.Super.* at 323, 841 *A.*2d 430.

In *Caput Mortuum, LLC,* the Appellate Division considered the question of whether an executing judgment creditor who had become the actual owner of the subject property during the pendency of the appeal could exercise the right to redeem a tax sale certificate under *N.J.S.A.* 54:5–54. *Ibid.* The court held that the issue of whether the specific judgment creditor had the right to redeem was no longer an issue in that litigation given the changed status of the judgment creditor, which had become an owner entitled to redeem the tax sale certificate under the statute, and the issue was thus moot. *Id.* at 330, 841 *A.*2d 430.

However, the *Caput Mortuum, LLC* decision is distinguishable from the instant case. In that case, S & S Crown Services ("Crown") obtained a judgment against the defendant Stephen Gordon in Pennsylvania, which was transferred and domesticated in New Jersey. *Id.* at 328–29, 841 *A.*2d 430. Crown attempted to execute on its judgment but was prevented from doing so by the defendant Gordon's fraudulent transfers of his property, which led to Crown successfully asserting an action in federal court to set aside the transfers. *Id.* at 329, 841 *A.*2d 430. In the interim, a third party purchased a tax sale certificate for the defendant Gordon's property; the tax sale certificate was assigned twice, eventually

being held by the plaintiff *Caput Mortuum, LLC. Ibid.* After waiting the two-year period, Caput Mortuum filed an in personam tax foreclosure complaint to bar the equity of redemption in the property, and included Gordon, a mortgagee, and various judgment creditors of Gordon, including Crown, as defendants. *Ibid.* Crown did not dispute Caput Mortuum's right to foreclose, but instead claimed an entitlement to redeem the tax certificate as an equitable owner or under the doctrine of equitable subrogation. *Ibid.* The trial court judge rejected this position and granted Caput Mortuum's motion for summary judgment. *Id.* at 329–30, 841 *A.*2d 430. Importantly, Crown never actually exercised the right of redemption, but rather sought the court's permission to do so. Crown appealed, but during the pendency of the appeal, Crown successfully executed on its judgment and obtained title to the property, meaning that it had the status of an owner with an "undisputed right to redeem the tax sale certificate." *Id.* at 330, 841 *A.*2d 430. The Appellate Division noted that the issue of whether Crown, in its former status as judgment creditor, had the right to redeem was no longer an issue, given Crown's ownership of the property at the time of appeal, and thus the issue was moot.[2] *Ibid.*

Here, however, the issue presented is not whether a party who has not actually exercised the right of redemption has a theoretical right to redeem a tax sale certificate, as was the case in *Caput Mortuum, LLC.* Rather, the issue before this court is whether a redemption of a tax sale certificate that actually occurred may be considered valid. In *Caput Mortuum, LLC,* the Appellate Division considered the issue moot because the defendant Crown was seeking, essentially, a declaration that it had standing to exercise the right to redeem the tax sale certificate, which was ultimately made moot by the fact that during the pendency of the appeal

---

[2] The court did, though, proceed to decide the issue of whether a judgment creditor can redeem a tax sale certificate, as the issue was "one of substantial importance and [was] capable of repetition while evading review." *Caput Mortuum, LLC, supra,* 366 *N.J.Super.* at 330, 841 *A.*2d 430.

Crown actually gained a legal entitlement to redeem the certificate, making the issue of whether the court should issue a declaration that it had such a right completely moot. Here, however, defendant Highland House actually exercised the right of redemption at a time in which it had no legal right to do so. The fact that it subsequently became an owner of the property entitled to redeem the tax sale certificate under *N.J.S.A.* 54:5-54, at the February 2, 2017, sheriff's sale, simply does not render the issue of the validity of its actual redemption in September 2016 moot.

The fact here remains that at the time defendant attempted to redeem the tax sale certificate it was not one of the parties permitted to redeem the property under the statute. Defendant redeemed the tax certificate before it had even been awarded final judgment in its own separate foreclosure action, and obviously well before it was an owner of the property. Defendant's status at the time of the purported redemption did not even rise to the level of a judgment creditor, which New Jersey courts have held are not entitled to redeem under the statute. *See Caput Mortuum, LLC,* *supra,* 366 *N.J.Super.* at 323, 841 *A.*2d 430 Defendant, at the time of redemption, was simply a lienholder by way of past-due condominium assessments that was in the process of obtaining a final judgment in its action to foreclose those condominium liens. Accordingly, defendant was not an "owner" of the property, and, as already noted, was not a "mortgagee" of the property, or any other identified party in *N.J.S.A.* 54:5-54, and thus was not entitled to redeem the tax sale certificate.

Furthermore, there is no equitable reason to allow defendant condominium association to redeem the tax sale certificate when it was not entitled to by statute. Based upon the testimony of plaintiff's and defendant's attorneys at the hearing, despite plaintiff's attorney's mistaken belief that the defendant had a right to redeem the tax sale certificate, nothing in his conduct justifies, under a theory of waiver or estoppel, plaintiff being barred from the relief it now seeks. Plaintiff promptly sought relief from the

court after it was advised of defendant's rejection of its offer to buy the lien for maintenance charges.

As already noted, the tax sale certificate denotes a lien that has a higher priority than that of the condominium association's lien. *See N.J.S.A.* 46:8B–21(b). The foreclosure of tax sale certificates is a matter of great public policy, as a result of which the Legislature made the municipal tax liens "paramount to prior claims," including condominium associations' liens. *Caput Mortuum, LLC, supra,* 366 *N.J.Super.* at 334–35, 841 *A.*2d 430. This is also not a case where there is a significant risk of the property falling in the hands of a "title raider" to the detriment of a party with more equity in the property, which would be a disfavored result. *See Cherokee Equities, supra,* 382 *N.J.Super.* at 206, 887 *A.*2d 1203. Here, the amount owed to the plaintiff tax sale certificate holder, at the time of redemption on September 19, was $23,722.98. In comparison, the amount of Highland House's final judgment, filed on September 26, 2016, was $8,330.77. Accordingly, here, it would not be inequitable for the property to ultimately fall into plaintiff's hands, as this is not a case of a "title raider" in which a tax sale certificate holder may gain title to a property that purchased for very little money to the detriment of another party with significantly more equity in the property.

Accordingly, there is no basis upon which this court may conclude that the Highland House Condominium Association's purported redemption of the tax sale certificate on September 19, 2016 is valid.

Conclusion

For the aforementioned reasons, the court grants plaintiff's motion to vacate Highland House Condominium Association, Inc.'s redemption of Tax Sale Certificate No. 2006–1326 on September 19, 2016. The court however, does not make any finding on Highland House's legal ability to redeem the tax sale certificate at any point in the future based on its purchasing of the subject property at the February 2, 2017, sheriff's sale. This may very

well be the subject of future motion practice, as alluded to by plaintiff's attorney at the hearing on March 17, 2017.