**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2439-23

422 WEST FOURTH STREET,
LLC,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

ALLSTATES TITLE SERVICE,
INC., d/b/a ALLSTATE SEARCH
AND ABSTRACT CO., INC. (PA),

      Defendant-Respondent/
      Cross-Appellant,

and

CHICAGO TITLE INSURANCE
COMPANY,

      Defendant/Third-Party
      Plaintiff-Respondent/
      Cross-Appellant,

v.

ESTATE OF LINDSAY NUGENT
NELSON, deceased, EDGAR
NUGENT, W.N., a minor,

CAMERON NELSON, and JAMES
MITCHELL, Legal Guardian for
C.N., a minor,

    Third-Party Defendants-
    Respondents.

_____

Argued June 3, 2025 – Decided August 7, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law
Division, Burlington County, Docket No. L-1022-20.

Matthew R. Litt argued the cause for appellant/cross-
respondent (Litt Law, LLC, attorneys; Matthew R. Litt,
on the briefs).

Mark J. Leavy argued the cause for respondent/cross-
appellant Allstates Title Service, Inc. (Marks, O'Neill,
O'Brien, Doherty & Kelly, PC, attorneys; Mark J.
Leavy, on the briefs).

Hugh A. Keffer argued the cause for respondent/cross-
appellant Chicago Title Insurance Company (Fidelity
National Law Group, attorneys; Hugh A. Keffer, on the
briefs).

Ann P. McHugh, attorney for respondent Estate of
Lyndsay Nelson-Nugent,[1] Cameron Nelson, and C.N.,
joins in the briefs of respondents Allstates Title
Service, Inc. and Chicago Title Insurance Company.

_____

[1]  A review of the record shows that this is the proper spelling of Lyndsay
Nelson-Nugent's name. Though we do not modify Lyndsay's name in the
caption, we use the correct spelling throughout this opinion.

A-2439-23

Keerah D. McCratic argued the cause for respondent W.N.,[2] (Rutgers Law School, attorneys, join in the briefs of respondents Allstates Title Service, Inc. and Chicago Title Insurance Company).

Edgar S. Nugent, respondent, argued the cause pro se.

PER CURIAM

Plaintiff, 422 West Fourth Street, LLC appeals the trial court's order defendants for breach of contract, negligence, violations of the New Jersey Consumer Fraud Act (CFA),[3] common law fraud, and vicarious liability. We affirm.

I.

We derive the facts from the motion record, and we view them in a light most favorable to plaintiff. Pantano v. N.Y. Shipping Ass'n, 254 N.J. 101, 116 (2023). This dispute arises from Lyndsay Nelson-Nugent's[4] (Nelson-Nugent) attempted transfer of 422 West Fourth Street, Florence, New Jersey (the property) to plaintiff.

---

[2] To protect the privacy of minor children, we use initials in place of a full name. See Sashihara v. Nobel Learning Cmtys., Inc., 461 N.J. Super. 195, 198 (App. Div. 2019).

[3] N.J.S.A. 56:8-1 to -227.

[4] Nelson-Nugent is now deceased.

A-2439-23

As background, the undisputed record shows Nelson-Nugent's property was in foreclosure during the period when she attempted to sell her property to plaintiff. On June 27, 2016, Christiana Trust purchased a certificate of sale for unpaid tax liens on the property. Christiana then filed a foreclosure complaint and notice of lis pendens against Nelson-Nugent and her husband, Edgar S. Nugent, (the Nugents) in September 2018. Sometime in early 2019, Nelson-Nugent discussed sale of the distressed property with Art Matuschat, who formed 422 West Fourth Street, LLC.

On March 4, 2019, Matuschat met with Nugent at the Burlington County jail, where he was incarcerated. During the meeting, Nugent transferred his share in the property to his wife via a signed and notarized deed. Allstates submitted the deed to the Burlington County Clerk's office the same day.[5] Two days later, on March 6, the Chancery Division entered an order in the foreclosure action, establishing the amount required to redeem the property and setting the payment deadline of May 6, 2019.

The following day, on March 7, Allstates, Chicago Title's issuing agent, issued plaintiff a commitment for title insurance. Schedule A of the commitment

---

[5] The Burlington County Clerk's office did not record the deed until May 8, 2019.

A-2439-23

identified the proposed insured as 422 West Fourth Street LLC. The property to be insured was described as "vested in: Edgar S. Nugent and Lyndsay P. Nelson-Nugent, husband and wife dated March 14, 2014, recorded April 2, 2014 in Deed Book OR13119 Page 4796 and as instrument No. 5053426." The title commitment established twenty separate conditions to be met before Chicago Title would issue a policy. Condition four identified two "[d]ocuments satisfactory to the Company that convey the [t]itle or create the [m]ortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in [p]ublic [r]ecords." The two documents were: a deed from Edgar S. Nugent and Lyndsay P. Nelson-Nugent to 422 West Fourth Street LLC; and a mortgage, executed by west Fourth Street LLC in favor of a to-be-designated entity to secure a proposed loan in the amount of $105,000. The title commitment clearly stated that failure to complete all conditions precedent within 180 days would terminate the commitment and end Chicago Title's obligation to provide title insurance.

On April 5, 2019, plaintiff and Nelson-Nugent closed on the sale of 422 West Fourth Street at Allstates' offices. The undisputed record shows that Matuschat, plaintiff's principal, regularly conducted real estate closings at the Allstates offices, and always did so without the presence of any Allstates staff

A-2439-23

in the settlement room. It is also undisputed that Matuschat, a licensed real estate agent, but not an attorney, conducted the real estate closing with Nelson-Nugent in this exact manner on April 5. At the closing, plaintiff and Nelson-Nugent each executed: a use and occupancy agreement; a real estate sales contract; and a HUD-1 settlement statement. Per the HUD-1, plaintiff deposited $103,258 with Allstates. Plaintiff disbursed $42,294 to Nelson-Nugent for the property and $60,964 to Allstates. The HUD-1 statement further shows that, while Nelson-Nugent received $42,294 for the property, all but $170.21 of the money she received went to satisfy the outstanding tax lien.[6]

At the closing, Matuschat also provided Allstates with a second deed transferring title from Nelson-Nugent to plaintiff. The record shows this deed did not conform with condition four of the title commitment. Neither Allstates nor plaintiff ever recorded the non-conforming deed. Chicago Title's Schedule B condition four, which required production of a recorded deed executed by the Nugents to 422 West Fourth Street, LLC was never satisfied. The Chancery

---

[6] The record also shows that Nelson-Nugent paid Matuschat a real estate sales commission of $15,000, an amount more than the fees permitted under state law. See N.J.S.A. 46:10B-63(a)(14).

A-2439-23

Division entered a stipulation of dismissal on February 6, 2020, approximately ten months after closing, dismissing Christiana Trust's foreclosure complaint.

On August 26, 2020, plaintiff sued Allstates and Chicago Title, alleging: breach of the title commitment; negligent disbursal of plaintiff's funds; and consumer fraud under the CFA and common law. Plaintiff also claimed Chicago Title was vicariously liable for Allstates' actions. Defendants answered, filing cross-claims and naming various third-party defendants, including the Estate of Lyndsay Nelson-Nugent.

After the parties moved for summary judgment, the trial court requested supplemental briefing on the applicability of the New Jersey Tax Sale Law (TSL)[7] and related precedent. Upon re-argument, the trial court granted summary judgment for defendants and dismissed plaintiff's claims with prejudice. The court also dismissed all cross-claims and the third-party suit, finding those claims were premised upon the success of plaintiff's theories against Allstates and Chicago Title.

Relying upon Simon v. Cronecker, 189 N.J. 304 (2007), the trial court determined that plaintiff had violated the TSL, specifically N.J.S.A. 54:5-89.1,

[7] N.J.S.A. 54:5-1 to -137.

by failing to intervene as a third-party investor in the underlying tax foreclosure action before attempting to buy the Nugents' property. The court stated:

> As the Simon court explained, citing [TSL], specifically N.J.S.A. 54:5-98 and N.J.S.A. 54:5-89.1: "In the post-foreclosure complaint period, two separate provision of the [TSL] mandate intervention by a third-party investor before seeking redemption of a tax certificate. . . . [N.J.S.A 54:5-98] strongly implies that a person seeking to redeem a tax certificate must be either a party to the [foreclosure] action or a person intervening in the action." Simon, 189 N.J. at 320–21. Further, "[b]ecause N.J.S.A. 54:5-89.1 prohibits a third-party investor from becoming 'a party to [the foreclosure] action' and redeeming a tax certificate if he acquires an interest for only 'a nominal consideration,' it necessarily follows that he must be a party to the action if he pays nominal consideration." Id. at 322 (quoting N.J.S.A. 54:5-89.1). There is no dispute that the underlying foreclosure action in this matter before the [c]ourt was based on tax certificates, and thus the relevant sections of the [TSL] apply here.

> Plaintiff makes the legally unsupported argument that it did not have an obligation to intervene in the underlying foreclosure action because the plaintiff in the underlying foreclosure action (i.e., the tax certificate holder) did not object to 422 West Fourth Street's redemption. However, that is not the legal standard that has been applied by our Supreme Court. The position of the plaintiff in the foreclosure action is irrelevant to the third-party investor's duty to intervene. As there was a foreclosure action pending at the time [p]laintiff was attempting to purchase . . . [Nelson-Nugent's] property, [p]laintiff had an obligation to intervene in the foreclosure action for judicial review of the proposed transaction.

8

[(Citations reformatted).]

Reading the statute and the title commitment together, the trial court found that "[Chicago Title's] responsibility would have only attached," had certain events taken place: first, court approval of the transaction pursuant to statute; and second, the parties to the purported sale had satisfied all the conditions precedent carefully spelled out in the commitment for title insurance. The trial court, relying on the doctrine of in pari delicto, determined that the illegality of the contract for sale made it so "the claims against [d]efendants [could not] be sustained and summary judgment in their favor [was] appropriate."

The court also found that defendants did not have standing to raise the Foreclosure Rescue Fraud Prevention Act (the FRFPA)[8] because they were not "owners" of the property. Under N.J.S.A. 46:10B-67(d), owners have standing to bring suit for treble damages when the FRFPA has been violated.

On appeal, plaintiff argues the trial court incorrectly applied the doctrine of in pari delicto, and then failed to analyze whether the title commitment was a collateral contract to the underlying contract for sale. Plaintiff also claims that the trial court erred by finding that it was plaintiff's responsibility to meet the conditions in the title commitment. On cross-appeal, both Chicago Title and

---

[8] N.J.S.A. 46:10B-53 to -68.

Allstates contend the trial court committed error by rejecting their illegality defense under FRFPA and by failing to consider their dismissal arguments on the merits.

## II.

### A.

In reviewing a trial court's decision to grant or deny a motion for summary judgment de novo, appellate courts apply the same standard governing the trial courts. Boyle v. Huff, 257 N.J. 468, 477 (2024) (citing Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Under these standards, courts should grant a motion for summary judgment if they find that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

"We ask first if, viewing the evidence in the light most favorable to the nonmoving party, genuine issues of material fact exist." New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 372 (App. Div. 2018) (citing Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012)). If not, this court is required to "'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J.

A-2439-23

Super. 486, 494 (App. Div. 2007)); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) ("[T]his [c]ourt must review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law.").

"'When no issue of fact exists, and only a question of law remains, [appellate courts] afford[] no special deference to the legal determinations of the trial court.'" Boyle, 257 N.J. at 477 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

B.

At the appellate level, "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co., 309 N.J. Super. 415, 420 (App. Div. 1998) (emphasis omitted).

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "'In a word, the judicial interpretive function is to consider what was written in the

11

context of the circumstances under which it was written, and [then] accord to the language a rational meaning in keeping with the express general purpose.'" Ibid. (quoting Owens v. Press Pub. Co., 20 N.J. 537, 543, 120 A.2d 442 (1956)). "[I]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alteration in original) (quoting In re Cnty. of Atl., 230 N.J. 237, 254 (2017)); Barila, 241 N.J. at 616 (explaining that when the intent of the parties is "plain" and the contractual language is "clear and unambiguous" the court must enforce the agreement as written).

## III.

We address first what we consider to be the dispositive issue, and we cite the relevant law.

N.J.S.A. 54:5-89.1 states:

> In any action to foreclose the right of redemption in any property sold for unpaid taxes or other municipal liens, all persons claiming an interest in or an encumbrance or lien upon such property, by or through any conveyance, mortgage, assignment, lien or any instrument which, by any provision of law, could be recorded, registered, entered or filed in any public office in this State, and which shall not be so recorded, registered, entered or filed at the time of the filing of the complaint in such action shall be bound by the proceedings in the action so far as such property is concerned, in the same manner as if the person had been

A-2439-23

made a party to and appeared in such action, and the judgment therein had been made against the person as one of the defendants therein; but such person, upon causing such conveyance, mortgage, assignment, lien, claim or other instrument to be recorded, registered, entered or filed as provided by law, may apply to be made a party to such action. No person, however, shall be admitted as a party to such action, nor shall the person have the right to redeem the lands from the tax sale whenever it shall appear that the person has acquired such interest in the lands for less than fair market value after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal relationship with the transferor, would in normal course be a party to an instrument for little or no consideration, or where such party acquired his interest at a judicial sale.

Our Supreme Court has been quite clear on the TSL's procedural role in protecting homeowners who are in "desperate financial circumstances." Simon, 189 N.J. at 304.

After the filing of the foreclosure complaint, however, both the property's sale and the redemption procedure are subject to court supervision, primarily to protect property owners from exploitation by third-party investors. N.J.S.A. 54:5-89.1 to -98; see Cherokee Equities v. Garaventa, 382 N.J. Super. 201, 209 (Ch. Div. 2005). The [TSL] recognizes that a property owner who has not redeemed a tax certificate by the time a foreclosure action has commenced is likely in desperate financial circumstances and therefore vulnerable to the manipulation of overbearing speculators. To facilitate judicial review of the adequacy of the consideration offered to the owner, the

13

A-2439-23

[TSL] requires that third-party investors who seek either directly or indirectly to acquire the property and redeem the tax sale certificate intervene in the foreclosure action.

[Simon, 189 N.J. at 320 (citations reformatted).]

Here, plaintiff failed to meet its statutory mandate to intervene in the foreclosure action before attempting to redeem the property. Without proper judicial review, the contract of sale between Nelson-Nugent and 422 West Fourth Street LLC was void ab initio. We agree with the trial court that, on these facts, the plaintiff's claims against Allstates and Chicago Title fail as a matter of law without proper intervention under the statute, and we affirm for the reasons expressed by the trial court to the extent they are consistent with our conclusion.

We note that, in Green Knight Capital, LLC v. Calderon, our Supreme Court adopted the principles espoused in Simon but nonetheless permitted an investor who failed to timely intervene after the filing of a foreclosure complaint to redeem a tax sale certificate. 252 N.J. 265, 276 (2022). In Green Knight, an investor moved for intervention after the tax sale certificate-holder sought a constructive trust over proceeds from the investor's purchase of the distressed property. Id. at 269. The Court, noting that the property owner netted $63,194.58, id. at 268, held that the Legislature did not envision strict

application of the procedural elements of the statute where the investor mistakenly attempted redemption before moving to intervene, and the owner received more than a nominal sum in the transaction, id. at 274, 276. Here, plaintiff never moved to intervene, with almost a year passing between the date of closing and the dismissal of the foreclosure complaint. Also, Nelson-Nugent realized less than $200 from the sale of her property. These two facts make this matter easily distinguishable from Green Knight.

For completeness' sake, we briefly address some issues raised by the parties.

"The doctrine of in pari delicto dictates that 'neither party to an illegal contract will be aided by the court, whether to enforce it or set it aside.'" Johnson v. McClellan, 468 N.J. Super. 562, 578-79 (App. Div. 2021) (quoting U.S. v. Farrell, 606 F.2d 1341, 1348-49 (D.C. Cir. 1979)). "Simply stated, 'a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit.'" Id. at 579 (internal quotation marks omitted) (quoting Clark v. Clark, 429 N.J. Super. 61, 77 (App. Div. 2012)); see also Ryan v. Motor Credit Co., 132 N.J. Eq. 398, 403 (E. & A. 1942) (holding a borrower who knowingly conspired with a lender to violate the small loan law in pari delicto with the

lender and therefore not entitled to be relieved from the consequences of his default on his loan).

We depart from the trial court's use of the doctrine to support its conclusion that plaintiff's claims fail as a matter of law. Nothing in the record suggests that the parties entered into any agreement for an illegal purpose. Investor-funded "rescues" of the owners of distressed properties are contemplated by our Legislature. The flawed and ultimately unsuccessful transactions between plaintiff and defendants were intended to facilitate such a rescue.

As to the title policy, a contract never formed between Chicago Title and its proposed insured, 422 West Fourth Street. "A void contract is '[a] contract that is of no legal effect, so that there is really no contract in existence at all. A contract may be void because it is technically defective, contrary to public policy, or illegal.'" D'Agostino v. Maldonado, 216 N.J. 168, 194 n.4 (2013). The Schedule B condition requiring production of a recorded deed between Nelson-Nugent, Nugent, and 422 West Fourth Street was never satisfied, and the 180-day limit on satisfaction of the Schedule B conditions expired. It follows that no enforceable title insurance policy could issue in favor of 422 West Fourth Street.

A-2439-23

Plaintiff argues, for the first time on appeal, that the title commitment issued by Chicago Title through its issuing agent, Allstates, should somehow be viewed as a contract between Allstates and plaintiff. Plaintiff posits that certain actions by Allstates resulted in breach of this agreement, including the improper disbursement of settlement funds. We need not consider arguments raised for the first time on appeal, except to consider jurisdictional matters or matters which substantially implicate the public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We decline to do so here, given the lack of merit in this specific argument. A title commitment is a contractual offer made to a potential real estate purchaser that "sets forth all the title insurer's [r]equirements for issuing a policy." Joyce Palomar, Title Insurance Law § 5.29 (2024 ed.). The title commitment "binds" or "commits" the insurer to issue a title insurance policy if certain conditions are met. Ibid. Additionally, we discern nothing in the record to suggest that Allstates performed any of its delegated tasks as the issuing agent improperly.

We reject defendants' argument on cross-appeal that the trial court erred by denying summary judgment based on the FRFPA. While each defendant argues the point differently, their invocation of the FRFPA ironically appears to be based on the doctrine of in pari delicto. As we noted earlier, the investor

17

agreement between plaintiff and Nelson-Nugent was not illegal. Plaintiff simply failed to properly intervene in the foreclosure litigation and secure proper judicial review of the agreement, as per the TSL. We agree with the trial court that defendants do not have standing to raise the FRFPA as a defense.

The primary legislative purpose of the FRFPA is to protect aggrieved property owners. The FRFPA "requires foreclosure consultants and distressed property purchasers, who contract with <u>owners of residential properties in financial distress</u>, to adhere to certain practices in providing foreclosure prevention services to owners." <u>Assemb. Fin. Inst. and Ins. Comm. Statement to A. 359</u> (March 4, 2010) (emphasis added). The FRFPA permits the New Jersey Commissioner of Banking and Insurance (the CBI) to initiate investigations or examinations to determine whether the statute has been violated. <u>See</u> N.J.S.A. 46:10B-68 ("The [CBI] shall enforce the provisions of [the FRFPA]."); N.J.S.A. 46:10B-66 ("The [CBI] may investigate or examine any foreclosure consultant, or other person as the commissioner deems necessary to determine compliance with [the FRFPA]."). Additionally, "[a]n owner may bring an action in Superior Court against a foreclosure consultant or a distressed property purchaser for any violation of [the FRFPA] for treble

damages, attorney's fees, costs of suit and appropriate equitable relief." N.J.S.A. 46:10B-67(d).

Here, the CBI has not determined that plaintiff violated the FRFPA, under N.J.S.A. 46:10B-68. Without such a finding, defendants, who are not property owners empowered to sue under the statute, cannot demonstrate that plaintiff has violated the FRFPA. It follows that defendants cannot invoke the statute as a defense.

Considering the plaintiff's failure to comply with the procedural requirements of the TSL and the absence of a binding agreement which would impose contractual obligations on either defendant, we need not reach the question of whether plaintiff's claims fail on the merits.

Any contentions raised by the parties on appeal or cross-appeal not addressed here lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division