**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3843-21

EQUITY TRUST CO., f/b/o
JONATHAN RUBIN IRA,

     Plaintiff-Respondent,

v.

MATTHEW LUCAS, SUZETTE
LUCAS, YARDVILLE NATIONAL
BANK, 1ST CONSTITUTION
BANK, TLF NATIONAL TAX
LIEN TRUST 2017-1, PNC
BANK NATIONAL ASSOCIATION,
COOPER ELECTRIC SUPPLY CO.,
AMERICAN ASPHALT CO., INC.,
THE BANK OF PRINCETON,
SELECTIVE INSURANCE
COMPANY OF AMERICA, THE
BOARD OF TRUSTEES OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL
825 PENSION FUND, OPERATING
ENGINEERS LOCAL 825 WELFARE
FUND, OPERATING ENGINEERS
LOCAL 825 APPRENTICESHIP
TRAINING AND RE-TRAINING
FUND, OPERATING ENGINEERS
LOCAL 825 SUPPLEMENTAL
UNEMPLOYMENT BENEFIT FUND,

OPERATING ENGINEERS LOCAL
825 SAVINGS FUND, OPERATING
ENGINEERS LOCAL ANNUITY
FUND, COUNTY OF MIDDLESEX,
STATE OF NEW JERSEY, MIDLAND
FUNDING, LLC, and ARROW
FINANCIAL SERVICES, LLC,

    Defendants.

_____

UDSNJ GROUP INVESTMENT, LLC,

    Intervenor-Appellant.

_____

Submitted November 28, 2023 – Decided December 13, 2023

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. F-000641-20.

McNally Law, LLC, attorneys for appellant (Stephen B. McNally, on the briefs).

Law Office of Abe Rappaport, attorneys for respondent (Kevin A. Lee, on the brief).

PER CURIAM

UDSNJ Group Investment, LLC, non-party intervenor, appeals from the

Chancery Division's April 8, 2022 and July 19, 2022 orders, which denied

UDSNJ's motion to intervene and redeem property in a tax sale foreclosure, and

entered final judgment in favor of plaintiff Equity Trust Co., f/b/o Jonathan Rubin IRA (Equity Trust). We affirm.

I.

In July 2005, defendants Matthew and Suzette Lucas acquired a commercial property on Allen Road, Hightstown. The property was a six-acre parcel with seven residential rental units. Approximately five years after defendants purchased the property, they failed to pay their municipal taxes. In October 2010, the Robbinsville Tax Collector sold Tax Sale Certificate No. 10-00032 (2010 tax sale certificate) for $23,465.40. A few years later, defendants also failed to pay their sewer taxes for 2014, 2015 and 2016. In June 2017, Tax Sale Certificate No. 17-00042 (2017 tax sale certificate) was sold for $58,261.07.

In January 2020, the 2017 tax sale certificate holder commenced an action seeking to foreclose the right of redemption on the property. Around August 2020, Equity Trust was assigned the 2017 tax sale certificate, and in April 2021, filed a second amended complaint. The 2017 tax sale certificate was assigned four times.

Approximately two years after the initial complaint was filed, and nine months after the second amended complaint was filed, UDSNJ purchased the

2010 tax sale certificate for $35,000. UDSNJ obtained the seventh assignment of the 2010 tax sale certificate. As of February 2022, the tax certificate redemption amounts were: $367,621.72 for the 2010 tax sale certificate, and $254,886.23 for the 2017 tax sale certificate. The property was valued at approximately $700,000.

On March 15, 2022, UDSNJ filed a motion to intervene and redeem the property. In UDSNJ's application it recognized, under N.J.S.A. 54:5-89.1, that it was required to intervene to redeem the property because a tax sale certificate foreclosure action had commenced and demonstrate the tax sale certificate purchased on the property was for fair market value. UDSNJ argued that its tax certificate purchase for $35,000 "was fair value under the circumstances of [the] acquisition," and thus, intervention and redemption were appropriate. Further, UDSNJ asserted it negotiated the purchase price as a sophisticated lien investor knowing it was "acquiring a junior position on the property that [wa]s in somewhat disrepair." Equity Trust opposed the motion, arguing the fair market value was the redemption value of the tax sale certificate and asserting if an "entity [wa]s allowed to pay such a small sum . . . at the end of the foreclosure," it would affect subsequent tax sale certificate purchasers from "paying all the [subsequent] taxes as they [we]re supposed to."

A-3843-21

Chancery Judge Timothy P. Lydon entered an order denying UDSNJ's motion. In his cogent oral decision, the judge reasoned that there were two options to measure fair market value "[i]n the context of the redemption of tax sale certificates," either: (1) "the value of the property itself based on a formal appraisal or other common metrics to obtain a potential sales price"; or (2) full redemption value of the tax sale certificate. The judge accepted the parties' stipulated estimated property value of $700,000. He found under either analysis, UDSNJ's purchase at $35,000 was not fair market value. The judge rejected UDSNJ's flexible valuation approach and found the failure to pay fair market value for the 2010 tax sale certificate, as required by N.J.S.A. 54:5-89.1, foreclosed intervention and redemption. The judge entered final judgment for Equity Trust. This appeal followed.

On appeal, UDSNJ argues the judge erroneously: failed to permit intervention and redemption; determined that UDSNJ failed to pay fair market value for the 2010 certificate; and interpreted the meaning of fair market value in N.J.S.A. 54:5-89.1 too strictly, which unconstitutionally restricted the alienability of the 2010 tax sale certificate.

## II.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Accordingly, legal questions of statutory interpretation are reviewed de novo. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

We interpret a statute by reviewing its plain language. Goldhagen v. Pasmowitz, 247 N.J. 580, 599 (2021). "[O]ur 'overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" Bermudez v. Kesller Inst. for Rehab., 439 N.J. Super. 45, 50 (App. Div. 2015) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 518 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

A-3843-21

III.

The parties do not dispute intervention is permitted in a tax sale foreclosure after the filing of the complaint, but prior to final judgment, if a party has acquired a tax sale certificate on the property at fair market value. The statute, N.J.S.A. 54:5-89.1, states in pertinent part:

> In any action to foreclose the right of redemption in any property sold for unpaid taxes or other municipal liens, all persons claiming an interest in . . . such property, by or through any conveyance, mortgage, [or] assignment . . . shall be bound by the proceedings in the action so far as such property is concerned . . . but such person . . . may apply to be made a party to such action. No person, however, shall be admitted as a party to such action, nor shall the person have the right to redeem the lands from the tax sale whenever it shall appear that the person has acquired such interest in the lands for less than fair market value after the filing of the complaint.
>
> [(Emphasis added).]

In 2021, the Legislature amended N.J.S.A. 54:5-89.1 "to bar investors from redeeming when acquiring, after the filing of a foreclosure complaint, an interest 'for less than fair market value.'" Green Knight Capital, LLC v. Calderon, 252 N.J. 265, 271 (2022) (quoting L. 2021, c. 231, § 1 (effective Sept. 24, 2021)). As we have recognized, a "holder of a subsequent tax sale certificate can cut off a prior certificate holder's right of redemption only by bringing an action to

7

foreclose." Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 165 (App. Div. 2005).

UDSNJ contends the judge erred in denying intervention and the right to redeem because it had purchased the 2010 tax sale certificate at fair market value for $35,000 "given the context of its transaction." It argues the parties agreed on the purchase with an understanding of "the implicit jeopardy of the foreclosure," an uncertainty as to the property value, and the unknown outcome of the "foreclosure litigation." In essence, UDSNJ argues the judge should have deferred to the sophisticated parties' determination of fair market value based on their evaluation of risk. We are not persuaded.

As Judge Lydon correctly found, UDSNJ's $35,000 payment for the tax sale certificate did not constitute fair market value. The judge first reviewed fair market value in the context of the property's value. Because the property was undisputedly worth over $700,000, and "the cost to redeem the 2017 certificate [wa]s $245,886.23," the judge determined that UDSNJ would "gain nearly $450,000 in profit" while only paying $35,000. The judge reasoned the "significant" yield of $450,000 in profit, even factoring the alleged risks, was not justly at fair market value. The judge next considered the valuation based on the 2010 tax sale certificate redemption value. The judge found the purchase

was not at fair market value because it was "far below the redemption value of the 2010 certificate," as the actual redemption value was $367,621.72 in February of 2022. He reasoned that the purchase price was less than 10% of the redemption value; thus, UDSNJ's position that it purchased the tax certificate at fair market value was unsupported.

The record shows UDSNJ was a "sophisticated buyer" aware of the risk as a late intervenor and fully apprised of the statutory requirements to establish the certificate was purchased at fair market value. The judge determined, even accepting the risks as presented by UDSNJ and considering the "flexible, under-all-the-circumstances approach" adopted by the Court in Simon v. Cronecker, 189 N.J. 304, 334 (2007), $35,000 was not fair market value for the 2010 tax sale certificate. We discern no reason to disturb Judge Lydon's well-reasoned determination that fair market value was not paid for the 2010 tax sale certificate.

Almost seventy-five years ago, our Supreme Court elucidated "'value' has many meanings," providing

> most things have a general demand which give them a value transferable from one owner to another. Ordinarily this transferable value may be measured by the price which, in all probability, would voluntarily be agreed upon in fair negotiations . . . and it is this price

9

> which is generally said to determine the fair amount of compensation to be paid to the owner.

> [Trenton v. Lenzner, 16 N.J. 465, 476 (1954).]

Similar to the motion judge, we discern no merit in UDSNJ's argument that a more flexible fair market value application is warranted because there was no consequence to the homeowners or predatory title raiding. While UDSNJ accurately observes an underlying legislative purpose of the 2021 statutory amendment was to protect property owners, that is not the only consideration. Our Supreme Court has long recognized "two competing public policy goals" embodied in the New Jersey Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137: "one to enhance the tax-collecting ability of municipalities by encouraging tax sale foreclosures and the other to protect property owners from the devastating consequences of foreclosure." Cronecker, 189 N.J. at 315 (emphasis added). The interest in promoting marketability of tax sale certificates has long been recognized. In Cronecker, the Court further "acknowledge[d] that the primary goal of the [TSL] is to encourage the sale of tax certificates." Id. at 331 (citing N.J.S.A. 54:5-85). Indeed, "the market for [tax sale] certificates surely will be diminished by the changed odds on the risk" of late intervention for less than fair market value is permitted. Town of Phillipsburg, 380 N.J. Super. at 175.

Finally, we are unpersuaded by UDSNJ's argument that the judge strictly interpreted fair market value in a manner that unconstitutionally impaired "an owner's right to alienate an interest in property." A tax sale certificate owner is unrestricted in selling prior to the filing of a tax sale foreclosure complaint—only thereafter must the sale be at fair market value. Unquestionably, a tax certificate holder who has commenced a foreclosure action, as occurred here, has expended time, resources, and expenses. We observe Equity Trust in this matter paid all the subsequent taxes on the property. Accepting UDSNJ's flexible valuation approach, allowing for the last-minute tax sale certificate redemption would not only prejudice Equity Trust, but would discourage the purchase of tax sale certificates.

The legislative requirement that an interest in the property be purchased at fair market value inures to the goal of promoting subsequent tax sale certificate purchases. See BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 127 (App. Div. 2021) ("[W]e are mindful of the countervailing policies of the [TSL]: to encourage investors to acquire tax sale certificates and fill municipal coffers with taxes that property owners have not paid."). We are guided by our Supreme Court's recent recognition that in requiring an investor to "intervene before being allowed to redeem . . . . the

Legislature intended to ensure the avoidance of sharp practices by calling for judicial oversight—that a last-minute investor would not be permitted to redeem without the trial court's imprimatur." Green Knight Capital, 252 N.J. at 275. This premise stands for a late tax sale certificate purchaser as well. We discern no reason to disturb the well-reasoned decision of Judge Lydon.

To the extent not addressed, UDSNJ's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3843-21